## BELL et al. v. HOOD et al.

### No. 10790.

Circuit Court of Appeals, Ninth Circuit.

June 7, 1945.

Writ of Certiorari Granted Oct. 22, 1945.

See 66 S.Ct. 98.

Lorrin Andrews and A. L. Wirin, both of Los Angeles, Cal. (Betty Aronow, of Los Angeles, Cal., of counsel), for appellants.

Charles H. Carr, U. S. Atty., and Ronald Walker, Asst. U. S. Atty., both of Los Angeles, Cal., for appellees.

Before MATHEWS, STEPHENS, and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

The district court ruled that it was without original jurisdiction of the subject matter and dismissed the complaint. Plaintiffs below appeal. For convenience we shall refer to appellees as defendants.

The complaint filed in the district court sounds in tort; the damages prayed for far exceed the jurisdictional requirement as to value in controversy; there is no diversity of citizenship. It follows that the district court was right unless original jurisdiction of the case is conferred by § 41, Title 28 U.S.C.A., § 24 of the Judicial Code, as amended, the applicable part of which reads: "The district courts shall have original jurisdiction as follows: (1) * * * [when the case] (a) arises under the Constitution or laws of the United States, * * *."

Appellants contend that their right of action arises under the Fourth and Fifth Amendments to the federal Constitution, which we quote in the margin.[1]

It is set out in the complaint that defendants, through the medium of unlawful and unreasonable searches and seizures, have violated the Fourth Amendment to the personal injury of the several plaintiffs and that such defendants have invaded plaintiffs' immunities as provided by the Fifth Amendment to the effect that no person "* * * shall be compelled in any Criminal Case to be a witness against

---

[1] The Fourth Amendment: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fifth Amendment: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

For an historical account of search and seizure and Fourth and Fifth Amendments see Boyd v. United States, 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746.

himself, nor be deprived of life, liberty, or property, without due process of law; * * *." It is therefore alleged and argued by the plaintiffs that they have a right to recover personal judgments in the federal district court against the defendants involved for injuries sustained.

It is alleged in the complaint that Arthur L. Bell, one of the plaintiffs and appellants, is an "Associate of and Division Superintendent of Mankind United, a Voluntary Association," and brings the action in behalf of the organization and of the Associates thereof. Whether or not Bell can legally, or whether or not he has the right or power to, maintain the action on behalf of such persons or on behalf of such association, we do not consider.

The defendants are not sued in the capacity of officers but it is alleged in the complaint that they were, with one exception, Federal Bureau of Investigation officers.

It appears that one Merle Armstrong, one of the defendants below, is a Los Angeles policeman and that he was not an acting federal officer at any of the time or during any of the events with which this action is concerned. Counsel stated in the oral argument in this court that they do not press any of their points as to Armstrong, and we shall therefore proceed in our reasoning without regard to him.

At the time of the alleged invasion of plaintiffs' rights each plaintiff stood indicted as of December 18, 1942, by a federal grand jury of violating § 34, Title 50 U.S.C.A. (use of United States mails to defraud). No trial had been held.

It is alleged that the defendants, on the day the indictment was returned, "unlawfully conspired with each other to act beyond their authority as said Federal Bureau of Investigation agents and police officer respectively, and agreed that they would abridge the Constitutional rights of the plaintiffs as guaranteed by the Fourth and Fifth Amendments to the Constitution of the United States to be free from the deprivation of liberty and property without due process of law, and to be free from unreasonable searches and seizures, and agreed unlawfully to simultaneously, in the early morning of December 18th, 1942, search the homes of the individual plaintiffs herein without any warrants of search or seizures, and unlawfully to seize the papers, documents and effects of said plaintiffs and of 'Mankind United', and falsely to imprison the individual plaintiffs by unlawfully arresting some of the individual plaintiffs without a warrant of arrest and unreasonably to delay the taking of all of the individual plaintiffs before a committing officer, in order to effectuate the unlawful searches and seizures aforesaid.

"That thereafter, and on the 18th day of December, 1942, as will appear more particularly hereinafter, the defendants and each of them, in order to carry out the terms and conditions of the illegal conspiracy aforesaid, and solely for the purpose of carrying out said terms and conditions, did arrest and imprison the individual plaintiffs herein, and did search the homes of said plaintiffs, and seize and carry away books, papers and effects of said individual plaintiffs and of said 'Mankind United.' "

It is alleged that as to plaintiff Bell the following occurred. Defendants Cruise, Bowser, Langdon, Gieson, Greer, and two named fictitiously broke doors of his residence, entered, and arrested Bell. The defendants had no search warrant or warrant of arrest. They searched the entire premises leaving them in confusion and disorder. They took Bell and held him for several hours away from the premises and did not take him before a magistrate. They took thousands of documents, papers, and records belonging to "Mankind United", which were entrusted to Bell and took $8,500.00 in money. They took property belonging to Bell and his wife including safe deposit boxes. During a considerable period Bell was held incommunicado and not allowed to see his attorney who was just outside the door, and he was questioned. The allegations are to the effect that at about the same time all the other plaintiffs were subjected to essentially the same illegal treatment, though in detail varying, by one or more of the defendants.

It is apparent that each plaintiff personally seeks compensatory damages for alleged illegal arrest, false imprisonment, the forceable removal of his person from one place to another, the searching of his premises illegally and unreasonably, the seizing of property belonging to him and others, and the questioning without affording him the aid or advice of an attorney.

■ There can be no question but that the complaint states strong cases, and if the allegations have any foundation in

truth, the plaintiffs' legal rights have been ruthlessly violated. The question of whether or not actions for the recovery of personal judgments for damages against the defendants individually can be maintained in federal court under the allegations hereinbefore briefly set out was directly before the trial court, and it very properly noticed the question sua sponte, and answered it in the negative.

█ █ It will be helpful at this juncture briefly to comment upon the genesis of the Fourth and Fifth constitutional Amendments.[2] The theory of our federal Constitution is that each state is sovereign with absolute sovereign powers unlimited except by those powers which have been granted to the federal government. No right or any power to curtail any right mentioned in either the Fourth or Fifth Amendments was ever surrendered or was ever granted to the United States Government by the states or by the people. However, fearing that the exercise of the power actually granted to the central government of the union might tend to whittle away the civil rights of the people, the people affirmatively asserted some of such rights in the text of the national charter itself. In stating them, the people did so by directly denying to the federal government the power to infringe upon such rights.

█ Nowhere in this case is there a suggestion that anyone questions the existence of or a complete understanding of these rights. (We use the word "rights" throughout this opinion as including immunities mentioned in the constitutional articles here under consideration.) The allegations of the complaint are that the defendants conspired to do what they recognized as beyond their authority. Therefore, there is no question of construction concerning any constitutional or other United States law.

Chief Justice Marshall declared in Cohens v. Virginia, 1821, 6 Wheat. 264 19 U.S. 264, 379, 5 L.Ed. 256: "A case in law or equity consists of the right of the one party, as well as of the other,

and may truly be said to arise under the constitution or a law of the United States, whenever its correct decision depends on the construction of either." In Osborn v. Bank of the United States, 1824, 9 Wheat. 738, 22 U.S. 737, 821, 822, 6 L.Ed. 204, he commented: "If it be a sufficient foundation for jurisdiction, that the title or right set up by the party, may be defeated by one construction of the constitution or law of the United States, and sustained by the opposite construction, provided the facts necessary to support the action be made out, then all the other questions must be decided as incidental to this, which gives that jurisdiction."

The trial court thought Taylor v. De-Hart, D.C.Mo., 1926, 22 F.2d 206, which presents essentially the same question as here, was correctly decided. Cornelius in his work on Search and Seizure (2d ed.), p. 958, § 491, states the rule as follows: "Where an illegal search has been made by federal officers in violation of the rights of the plaintiff under the Fourth and Fifth Amendments, no action will lie in the federal court unless there is a diversity of citizenship between the parties or the circumstances are such that a federal court would have otherwise had jurisdiction, in other actions between such parties. The fact that a right of action arises under the Constitution of the United States because of the violation of a constitutional right, does not involve a controversy of such a nature as to give jurisdiction to the federal court under its judicial code," Section 24." See Dobie, "Federal Jurisdiction and Procedure" (1928), p. 164, § 60.

The Supreme Court in Gully v. First National Bank, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 treats the question as to when a cause arises under the Constitution or laws of the United States, and the opinion (by Mr. Justice Cardozo) is consistent with the quotation from Cornelius, supra. See Marshall v. Desert Properties Co., 9 Cir., 1939, 103 F.2d 551, 552; Viles v. Symes, 10 Cir., 1942, 129 F.2d 828. We comment on the Gully case in the margin.[3] The recent case of Tunstall v.

---

2 For statement that these amendments are limitations upon government action and no more, see Burdeau v. McDowell, 1921, 256 U.S. 465, 472, 475, 41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159.

3 In Chaskin v. Thompson, 9 Cir., 1944, 143 F.2d 566, 569, appears the following paragraph: "In Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70, the court was considering a case which was begun in state court and removed to federal court upon motion of respondent (defendant) upon the ground that it arose under the Constitution or laws of the United States (Jud.Code §

Brotherhood of Locomotive Firemen & Enginemen, Ocean Lodge No. 76, 1944, 323 U.S. 210, 213, 65 S.Ct. 235, 237, is not, as appellants argue, favorable to their views. The court therein plainly states, as the basis for holding the case properly laid in federal court, that it concerns "commerce." In the words of the court, "The case is therefore one arising under a law regulating commerce of which the federal courts are given jurisdiction by 28 U.S.C. § 41(8), 28 U.S.C.A. § 41(8), Judicial Code § 24(8)."

It will be noticed that Congress has enacted no law under the authority of the constitutional provision relied upon by plaintiffs as the jurisdictional basis giving United States Courts jurisdiction over torts in general. It has enacted laws granting such jurisdiction as to public officials who have given official bonds and in certain other instances as in the case of Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, supra.

It appears by the allegations in the complaint that the defendants, with the single exception of Armstrong, are federal peace officers, but that they conspired to go beyond the scope of their authority as such. It would seem that an effort was made to distinguish the action as one against the defendants in their individual capacity and not as officers. There might be cases in which this distinction is important, but we think it is of no importance in the instant case.

■ Appellants allege that appellees base their actions upon §§ 300–302, Title 5 U.S.C.A. But this allegation avails them nothing as jurisdiction is not affected by allegations of probable defenses. Gully v. First National Bank, supra.

We are of the opinion and so hold that the trial court did not err in holding that the action does not arise under the Constitution or laws of the United States in the sense the Congress used that expression in § 41 of Title 28 U.S.C.A., § 24, Jud.Code, and that it did not err in dismissing the complaint.[4]

Appellants' motion to remand submitted April 30, 1945, is denied.

Affirmed.

---

28, 28 U.S.C.A. § 71. Cf. Jud.Code § 24(1) (a), 28 U.S.C.A. § 41). The motion was granted, and federal trial court subsequently denied remand. The action was for unpaid state taxes on national bank shares. The circuit court of appeals sustained the federal jurisdiction, 299 U.S. at page 112, 57 S.Ct. at page 97, 81 L.Ed. 70, 'upon the ground that the power (of the state) to lay a tax upon the shares of national banks has its origin and measure in the provisions of a federal statute (citation), and that by necessary implication a plaintiff counts upon the statute in suing for the tax.' The Supreme Court then discusses the question 'how and when a case arises "under the Constitution or laws of the United States" ' and, referring directly to the case before it, says, 299 U.S. at page 115, 57 S.Ct. at page 98, 81 L.Ed. 70: 'The obligation of the contract (the tax levy) being a creation of the state, the question remains whether the plaintiff counts upon a federal right in support of his claim that the contract has been broken. The performance owing by the defendant was payment of the valid debts, and taxes are not valid debts unless lawfully imposed. From this defendant argues that a federal controversy exists, the tax being laid upon a national bank or upon the shareholders therein, and for that reason being void unless permitted by the federal law. * * * That there is a federal law permitting such taxation does not change the basis of the suit, which is still the statute of the state, though the federal law is evidence to prove the statute valid.' And again on page 117 of 299 U.S., on page 99 of 57 S.Ct., 81 L.Ed. 70, the court says: ' * * * The most one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government. A dispute so doubtful and conjectural, so far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states.' "

Inconsistent reasoning will be encountered in the cases, and the student of the question should not allow cases concerning illegally procured evidence to confuse his study.

[4] Interesting upon the general subject of Federal court jurisdiction in Civil Rights cases are the following: Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835; Nashville C. & St. L. Ry. v. Browning, 310 U.S. 362–369, 60 S.Ct. 968, 84 L.Ed. 1254; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Ex parte Royall, 117 U.S. 241–251, 6 S.Ct. 734, 29 L.Ed. 868; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; Screws v. United States, 65 S.Ct. 1031.