**Sheila PAYNE, next best friend of Franklin Payne, a minor, et al., Appellants,**

v.

**GOVERNMENT OF the DISTRICT OF COLUMBIA et al.**

**No. 74–1861.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 8, 1975.

Decided June 7, 1977.

As Amended June 15, 1977.

---

Richard J. Hopkins, Washington, D.C., with whom Christine Dennis LeFlore, Washington, D.C., was on the brief for appellants.

Leo N. Gorman, Asst. Corp. Counsel for the District of Columbia, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before TAMM, ROBINSON and MacKINNON, Circuit Judges.

Per Curiam Statement.

Opinion filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

Concurring Opinion filed by Circuit Judge TAMM.

Opinion filed by Circuit Judge MacKINNON, concurring specially.

PER CURIAM:

Judge Tamm, Judge Robinson and Judge MacKinnon file separate opinions. Judge Tamm concurs in the result reached by Judge Robinson in his opinion. Judge MacKinnon concurs in the result reached by Judge Tamm in his opinion. The judgment appealed from is reversed, and the case is remanded to the District Court for further proceedings.

*So ordered.*

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The gravamen of this litigation is the claim that Officer David Lea, Jr., of the Metropolitan Police Department, wilfully and maliciously aimed and several times discharged a firearm[1] at appellants[2] while they occupied an automobile. Asserting an infringement thereby of rights secured by the Fifth Amendment,[3] appellants filed an action in the District Court seeking damages from Officer Lea and the District of Columbia.[4] Jurisdiction of the court was invoked under the general federal-question statute, 28 U.S.C. § 1331(a),[5] and the complaint demanded for each appellant $15,000 as compensation for alleged injuries, largely emotional, from the shooting and another $15,000 as a punitive award.

The District of Columbia moved to dismiss the action on the grounds that it presented no federal question and that no judgment exceeding $10,000 for any appellant would be justified.[6] The District Court agreed on both counts and granted the motion. The court held that "to a legal certainty . . . no [appellant] is entitled to or could properly recover a judgment in excess of $10,000. . . ."[7] The court further held "that the present case is a tort action for assault and that [appellants] have failed to allege or indicate any circumstances which raise their claims to a constitution-

1. The record, as developed subsequently to filing of the complaint, identifies the weapon as the officer's service revolver.

2. The appellants are Franklin Payne, Larry Jones, Parney Jenkins and Preston Martin. The first three were minors when this litigation was instituted.

3. The complaint also charges violations of the Fourth and Sixth Amendments. In the view I take, there is no present occasion to look beyond appellants' Fifth Amendment claims.

4. The complaint alleges that at the time of the incident Officer Lea was a police officer "acting in the course of his employment and engaged in the performance of his duties as a police officer" (¶ 6). See note 40 *infra*.

5. "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,-

000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a) (1970).

6. Only the District of Columbia sought dismissal on these bases. Initial service of process on Officer Lea was quashed and he was re-served, but not until almost 18 months after the shooting incident complained of. Officer Lea then moved to dismiss the complaint on the ground that the District's one-year statute of limitations for assault and battery suits had run. See D.C.Code § 12–301(4) (1973). The District Court did not rule on the latter motion, apparently because it felt it unnecessary to do so in light of its dismissal of the entire case for lack of jurisdiction.

7. Joint Appendix (J.App.) 40.

al dimension sufficient to confer jurisdiction on this Court," [8] and "that [appellants'] constitutional claims are immaterial, insubstantial, and made solely for the purpose of invoking the jurisdiction of this Court. . . ." [9] For these reasons, the court dismissed the action "for lack of jurisdiction," [10] after which this appeal was taken.

Appellate review thus summoned is quite narrow. Since the dismissal was predicated upon an absence of federal-court jurisdiction, the single question before the District Court was whether jurisdiction was to be found.[11] And since jurisdiction rested solely on Section 1331(a), the answer to the question depended upon the ability of appellants' claims to survive each of the two tests which that section erected.[12] Did the action "arise under the Constitution, laws, or treaties of the United States"?[13] Did the matter in controversy exceed "the sum or value of $10,000"?[14] In the view that both of these requirements were satisfied, I join in reversal of the District Court's judgment of dismissal and remand of the case for further proceedings.

8. J.App. 40.

9. J.App. 40.

10. J.App. 40.

11. See text *infra* at notes 20, 24.

12. *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), precludes reliance on 42 U.S.C. § 1983 (1970) or its concomitant jurisdictional statute, 28 U.S.C. § 1343(3) (1970).

13. See note 5 *supra*. This requirement is discussed in Part I *infra*.

14. See note 5 *supra*. This requirement, prerequisite when appellants' suit was filed, is discussed in Part II *infra*. On October 21, 1976, Congress abolished this requirement for cases wherein the jurisdiction of a district court is invoked on the ground that the matter arises under federal law and the "action [is] brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." Pub.L. No. 94–574, § 2, 90 Stat. 2721. Since all members of the court agree that, at least for the time being, the jurisdictional-amount requirement is met, it is unnecessary to inquire as to whether Pub.L. No. 94–574 applies to pending litigation, or whether

## I

The leading precedent on the first component of general federal-question jurisdiction is *Bell v. Hood*.[15] There parties sued agents of the Federal Bureau of Investigation in the District Court for the Southern District of California [16] for damages on the theory that Fourth and Fifth Amendment rights had been invaded.[17] The District Court dismissed the suit for want of federal jurisdiction and the Court of Appeals for the Ninth Circuit affirmed.[18] On further review, however, the Supreme Court reversed. Because of its controlling importance in the case at bar, I pause to analyze the *Bell* decision in some depth.

The Court began by rejecting the argument that because the complaint charged a trespass actionable under state law, it did not raise a federal question:

Whether or not the complaint as drafted states a common law action in trespass made actionable by state law, it is clear from the way it was drawn that petitioners seek recovery squarely on the ground that respondents violated the Fourth and Fifth Amendments. It charges that the

within its contemplation the District of Columbia is an "agency" of the United States, or Officer Lea is an "officer or employee" of the United States sued "in his official capacity." Compare *Marshall v. District of Columbia*, 182 U.S.App.D.C. —— at ———————, 559 F.2d 726 at 729–730 (No. 75–1651, 1977).

15. 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

16. See *Bell v. Hood*, 150 F.2d 96 (9th Cir. 1945).

17. The claim was that the agents illegally searched petitioners' homes, seized their papers, and arrested and incarcerated them. As described by the Supreme Court, the complaint

alleged that the damages were suffered as a result of the respondents imprisoning the petitioners in violation of their constitutional right to be free from deprivation of their liberty without due process of law, and subjecting their premises to search and their possessions to seizure, in violation of their constitutional right to be free from unreasonable searches and seizures.

*Bell v. Hood, supra* note 15, 327 U.S. at 679, 66 S.Ct. at 774, 90 L.Ed. at 940 (footnote omitted).

18. *Bell v. Hood, supra* note 16.

respondents conspired to do acts prohibited by these amendments and alleges that respondents' conduct pursuant to the conspiracy resulted in damages in excess of $3,000.[19] It cannot be doubted therefore that it was the pleaders' purpose to make violation of these constitutional provisions the basis of this suit. Before deciding that there is no jurisdiction, the District Court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. For to that extent "the party who brings a suit is master to decide what law he will rely upon and . . . does determine whether he will bring a 'suit arising under' the . . . [Constitution or laws] of the United States by his declaration or bill." . . . Though the mere failure to set out the federal or constitutional claims as specifically as petitioners have done would not always be conclusive against the party bringing the suit, where the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions . . ., must entertain the suit.[20]

These exceptions, the Court said, "are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."[21] The Court found, however, that the federal claims there involved were neither immaterial[22] nor insubstantial.[23] And, critically for present pur-

**19.** The then jurisdictional amount-in-controversy requirement. Act of June 25, 1948, ch. 646, 62 Stat. 930.

**20.** *Bell v. Hood, supra* note 15, 327 U.S. at 681–682, 66 S.Ct. at 775–776, 90 L.Ed. at 942–943, quoting *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716, 717 (1913). The Court added:

Thus allegations far less specific than the ones in the complaint before us have been held adequate to show that the matter in controversy arose under the Constitution of the United States. . . . The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy.

327 U.S at 682, 66 S.Ct. at 776, 90 L.Ed. at 943 (citations omitted).

**21.** *Id.* at 682–683, 66 S.Ct. at 776, 90 L.Ed. at 943–945.

**22.** "[T]he alleged violations of the Constitution here are not immaterial but form rather the sole basis of the relief sought. Nor can we say that the cause of action alleged is so patently without merit as to justify, even under the qualifications noted, the court's dismissal for want of jurisdiction. The Circuit Court of Appeals correctly stated that 'the complaint states strong cases, and if the allegations have any foundation in truth, the plaintiffs' legal rights have been ruthlessly violated.' Petitioners' complaint asserts that the Fourth and Fifth Amendments guarantee their rights to be free from unauthorized and unjustified imprisonment and from unreasonable searches and seizures. They claim that respondents' invasion of these rights caused the damages for which they seek to recover and point further to 28 U.S.C. § 41(1) [now § 1331(a)] which authorizes the federal district courts to try 'suits of a civil nature' where the matter in controversy 'arises under the Constitution or laws of the United States,' whether these are suits in 'equity' or at 'law.' Petitioners argue that this statute authorizes the Court to entertain this action at law and to grant recovery for the damages allegedly sustained. Respondents contend that the constitutional provisions here involved are prohibitions against the Federal Government as a government and that 28 U.S.C. § 41(1) does not authorize recovery in money damages in suits against unauthorized officials who according to respondents are in the same position as individual trespassers." *Id.* at 683, 66 S.Ct. at 776, 90 L.Ed. at 943–944.

**23.** "Respondents' contention does not show that petitioners' cause is insubstantial or frivolous, and the complaint does in fact raise serious questions, both of law and fact, which the District Court can decide only after it has assumed jurisdiction over the controversy. The issue of law is whether federal courts can grant money recovery for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments. That question has never been specifically decided by this Court. That the issue thus raised has sufficient merit to warrant exercise of federal jurisdiction for purposes of adjudicating it can be seen from the cases where this Court has sustained the jurisdiction of the district courts in suits brought to recover damages for depriving a

poses, the Court sharply distinguished the jurisdictional question presented for immediate resolution from the merits questions unavoidably pretermitted for determination at later stages of the litigation:

> Jurisdiction,. therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.[24]

Applying these principles, then, the Court concluded that there was jurisdiction:

> Whether the petitioners are entitled to recover depends upon an interpretation of 28 U.S.C. § 41(1)[25] and on a determination of the scope of the Fourth and Fifth

Amendments' protection from unreasonable searches and deprivations of liberty without due process of law. Thus, the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. For this reason the District Court has jurisdiction.[26]

▮ The instant case is not essentially different from *Bell*. The core issues germinated by appellants' complaint are whether the alleged attack by Officer Lea impinged on rights secured by the Fifth Amendment and, if so, whether there is a federal remedy by which those transgressions can be vindicated by awards of damages. Appellants invoke constitutional protection—as a matter of Fifth Amendment liberty— against malicious ruptures of bodily and mental integrity by police officers;[27] they also insist that a cause of action for redress of such invasions springs from the same constitutional source. As was the situation in *Bell*, "the right of [appellants] to recover under their complaint will be sustained if the Constitution . . . of the United States [is] given one construction and will be defeated if [it is] given another."[28] Unless appellants' action falls within one of

---

citizen of the right to vote in violation of the Constitution. And it is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the State to do. Moreover, where federally protected rights have been ·invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Id.* at 683–684, 66 S.Ct. at 776–777, 90 L.Ed. at 944 (footnotes omitted).

**24.** *Id.* at 682, 66 S.Ct. at 776, 90 L.Ed. at 943 (citations omitted).

**25.** The forerunner of 28 U.S.C. § 1331(a) (1970). Act of Mar. 3, 1911, ch. 231, § 24, ¶ 1, 36 Stat. 1091.

**26.** 327 U.S. at 684–685, 66 S.Ct. at 777, 90 L.Ed. at 994. Compare *James v. Lusby,* 162 U.S.App.D.C. 352, 356, 499 F.2d 488, 492 (1974); *Hartigh v. Latin,* 158 U.S.App.D.C. 289, 485 F.2d 1068 (1973), cert. denied, 415 U.S. 948, 94 S.Ct. 1470, 39 L.Ed.2d 564 (1974). See also *Gomez v. Wilson,* 155 U.S.App.D.C. 242, 250–252, 477 F.2d 411, 419–421 (1973); *Sullivan v. Murphy,* 156 U.S.App.D.C. 28, 50, 478 F.2d 938, 960, cert. denied, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973).

**27.** 28 ·U.S.C. § 1331(a) (1970) extends to suits against officials of the District of Columbia "acting in a purely local capacity." *Apton v. Wilson,* 165 U.S.App.D.C. 22, 35, 506 F.2d 83, 96 (1974). See also cases cited *infra* note 77.

**28.** See text *supra* at note 26; *Wheeldin v. Wheeler,* 373 U.S. 647, 649, 83 S.Ct. 1441, 1444, 10 L.Ed.2d 605, 610 (1963).

the two exceptions delineated in *Bell,* the federal-question component of Section 1331(a) is present.

■■■ The District Court believed that appellants' Fifth Amendment claims fell within *Bell's* first exception as constitutional supplications "clearly appear[ing] to be immaterial and made solely for the purpose of obtaining jurisdiction."[29] Since the judgment reciting that conclusion is unaccompanied by an explanatory opinion or memorandum, I am unable to discern why the court felt so. The District of Columbia argues that this is a simple tort case the outcome of which will turn exclusively on common law principles, and that it is "inconceivable that appellants might prevail on their constitutional claims and lose on their common law tort claims."[30] By this approach, it is said that the constitutional cast of appellants' complaint is immaterial to the action and was imparted only in an endeavor to get into the District Court. I find this argument unimpressive. It may be that, in situations where the claimant could prevail on a constitutional claim and yet lose on a concurrent common law counterpart, the District's suggestion is more easily dismissed.[31] But it certainly does not follow—from the mere fact that constitutional and local-law theories of an action must coexist or together perish—that advancement of the constitutional claim is just an effort to garner federal jurisdiction. Even assuming that, with respect to the alleged shooting, federal and local law protect the same interests and redress identical injuries,[32] *Bell* makes clear that the availa-

bility of a mechanism for local remediation does not ipso facto foreclose the possibility of a concurrent federal cause of action, and that "the party who brings a suit is master to decide what law he will rely upon. . . ."[33]

The District Court also denominated appellants' constitutional position "insubstantial,"[34] a categorization ostensibly within *Bell's* second exception for litigation "wholly insubstantial and frivolous."[35] Again I find myself in disagreement. As in *Bell,* "[t]he issue of law is whether federal courts can grant money recovery for damages said to have been suffered as the result of [a] federal officer[ ] violating the . . . Fifth Amendment[ ]."[36] It seems to me that no less here than there "the issue thus raised has sufficient merit to warrant exercise of federal jurisdiction for purposes of adjudicating it. . . ."[37]

■■■ Moreover, since *Bell* was decided there have been significant developments all the more indicative of jurisdiction in this case. In *Hagans v. Lavine,*[38] the Supreme Court elaborated on the meaning of "insubstantial and frivolous," the characteristic which will remove a claim from the ambit of federal-court jurisdiction:

[T]he federal courts are without power to entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit," . . . "wholly insubstantial," . . . ; "obviously frivolous," . . . ; "plainly unsubstantial," . . . ; or "no longer open to discus-

**29.** See text *supra* at note 21.

**30.** Brief for appellees at 6. See note 77 *infra.*

**31.** See, *e. g., Cardinale v. Washington Technical Inst.,* 163 U.S.App.D.C. 123, 127–128, 500 F.2d 791, 795–796 (1974).

**32.** Though not essential to the decision, it would appear that the interests respectively protected by federal constitutional law and local assault law are not congruent, and that injuries inflicted by officers acting under color of law are significantly different in kind from those resulting from acts of private persons. See *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 391–392, 91 S.Ct. 1999, 2002, 29

L.Ed.2d 619, 623–624 (1971); *Hartigh v. Latin, supra* note 26, 158 U.S.App.D.C. at 293, 485 F.2d at 1072.

**33.** See text *supra* at note 20.

**34.** See text *supra* at note 9.

**35.** See text *supra* at note 21.

**36.** See note 23 *supra.*

**37.** See note 23 *supra.*

**38.** 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

sion . . .." "The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' . . .

"Constitutional insubstantiality" . . has been equated with such concepts as "essentially fictitious," . . . ; "wholly insubstantial," . . . ; "obviously frivolous," . . . ; and "obviously without merit," . . . . The limiting words "wholly" and "obviously" have cogent legal significance.[39]

The claims which appellants assert do not appear to me to fall within this definition of insubstantiality. The constitutional interest they put forth is freedom from unjustified governmentally-inflicted bodily harm and from the apprehension thereof, which hardly is completely devoid of constitutional appeal.[40]

And when it is recalled that once the constitutional right is established, the only remaining question is "whether compensatory relief is 'necessary' or 'appropriate' to [its] vindication," [41] thereupon two later Supreme Court decisions come to the fore. In *Bivens v. Six Unknown Named Agents*,[42] the Court, addressing the question left open

**39.** *Hagans v. Lavine, supra,* note 38, 415 U.S. at 536–537, 94 S.Ct. at 1378–1379, 39 L.Ed.2d at 581–588 (citations omitted).

**40.** Compare, *e. g., Logan v. United States,* 144 U.S. 263, 282–283, 12 S.Ct. 617, 622–623, 36 L.Ed. 429, 435–436 (1892); *Jenkins v. Averett,* 424 F.2d 1228, 1232 (4th Cir. 1970); *York v. Story,* 324 F.2d 450, 455–456 (9th Cir. 1963), *cert. denied,* 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964), and cases cited therein at n.12.

An indispensable prerequisite to the District Court's jurisdiction under 28 U.S.C. § 1331(a) (1970) was a nonfrivolous assertion that Officer Lea acted under color of governmental authority at the time of the incident in suit. *E. g., Howard Univ. v. National Collegiate Athletic Ass'n,* 166 U.S.App.D.C. 260, 263–264, 510 F.2d 213, 216–217 (1975). Were it incumbent upon us to assess satisfaction of this requirement on the basis of the entire record, I would agree with Judge Tamm (separate opinion pt. I) that by the *Bell* standard appellants' action was not dismissible. I think, however, that the scope of proper inquiry in the instant case is much more restricted.

Appellants' complaint alleged that "[d]uring all times . . . [Officer] Lea . . . was a duly appointed and qualified police officer of the Metropolitan Police Department, agent of the Municipal Corporation of the . . . District of Columbia, and acting in the course of his employment and engaged in the performance of his duties as a police officer." Complaint ¶ 6. That allegation quite obviously charges governmental action in the constitutional sense, *Ex parte Virginia,* 100 U.S. 339, 346–347, 25 L.Ed. 676, 679 (1880), and its factual accuracy is not before us at this time. Jurisdiction under § 1331(a) depends upon a degree of substantive sufficiency of the plaintiff's claim and not upon the probability of success on the merits. See text *supra* at note 24;

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974); *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–667, 94 S.Ct. 772, 776–777, 39 L.Ed.2d 73, 78–79 (1974); *Baker v. Carr,* 369 U.S. 186, 199–200, 82 S.Ct. 691, 700–701, 7 L.Ed.2d 663, 675 (1962). Even a "[f]ailure to state a claim does not deprive the District Court of jurisdiction under 28 U.S.C. § 1331(a)" since that also is a matter affecting only the merits. *Apton v. Wilson, supra* note 27, 165 U.S.App.D.C. at 35 n.16, 506 F.2d at 96 n.16; *cf. Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80, 84–85 (1957).

Of course, appellants' ability to prove their allegation that Officer Lea acted under color of his authority as a police officer might have been tested on a motion for summary judgment, Fed.R.Civ.P. 56, but that was not the District's effort. Its motion sought dismissal, and strictly on grounds other than Officer Lea's capacity when the shooting occurred, and the District Court's ruling was equally limited. See text *supra* at notes 6–10. Moreover, without a challenge specifically directed to the existence of evidence on that point, no one can be sure that the record reflects all that could be brought to bear upon it. Compare *Local 336, Amer. Fed'n of Musicians v. Bonatz,* 475 F.2d 433, 437–438 (3d Cir. 1973); *Georgia A. & F. Ry. v. Atlantic Coast Line R.R.,* 373 F.2d 493, 497–498 (5th Cir.), *cert. denied,* 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120 (1967); *Cohen v. Cahill,* 281 F.2d 879, 880–881 (9th Cir. 1960); *Cooper v. United States Penitentiary,* 433 F.2d 596, 597 (10th Cir. 1970).

**41.** *Bivens v. Six Unknown Named Agents, supra* note 32, 403 U.S. at 407, 91 S.Ct. at 2010, 29 L.Ed.2d at 632 (concurring opinion).

**42.** *Supra* note 32.

in *Bell*,[43] inferred a cause of action for damages consequent upon a Fourth Amendment violation.[44] In the process, the Court considered factors and utilized a standard yielding guidance for similar treatment of other constitutional rights.[45] In *District of Columbia v. Carter*,[46] the Court, in holding that a federal statutory remedy available against a state[47] was inapplicable to the District of Columbia, was careful to point out that that result did not mean that for the incident complained of—arrest and assault by a police officer—"a possible claim against [the officer] of alleged deprivation of constitutional rights is not litigable in the federal courts of the District."[48] To these I would add decisions from other courts recognizing federal causes of action for violation of constitutional provisions other than the Fourth Amendment,[49] including prominently the Fifth.[50] It is not our mission at this stage of the litigation to decide whether a similar outcome should follow in this case.[51] The court exhausts its present function when it concludes that the District Court has jurisdiction to make that determination upon reaching the merits.[52]

I conclude, then, that the interests at stake in this litigation are not "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits."[53] It follows that the District Court possessed jurisdiction over appellants' action for damages if they satisfied also Section 1331(a)'s requirement respecting the amount in controversy,[54] and to that question I now turn.

43. *Bell v. Hood, supra* note 15, 327 U.S. at 684–685, 66 S.Ct. at 777, 90 L.Ed. at 944.

44. *Bivens v. Six Unknown Named Agents, supra* note 32, 403 U.S. at 390–397, 91 S.Ct. at 2001–2005, 29 L.Ed.2d at 623–627.

45. *Id.* at 395–397, 91 S.Ct. at 2004–2005, 29 L.Ed.2d at 626–627.

46. *Supra* note 12.

47. See 42 U.S.C. § 1983 (1970).

48. *District of Columbia v. Carter, supra* note 12, 409 U.S. at 433, 93 S.Ct. at 610, 34 L.Ed.2d at 625.

49. While a few courts have refused to extend *Bivens* beyond the Fourth Amendment, see *Archuleta v. Callaway*, 385 F.Supp. 384, 388 (D.Colo.1974); *Moore v. Schlesinger*, 384 F.Supp. 163, 165 (D.Colo.1974); *Davidson v. Kane*, 337 F.Supp. 922, 924 (E.D.Va.1972); see also *Smothers v. Columbia Broadcasting Sys., Inc.*, 351 F.Supp. 622, 625–626 & n.4 (C.D.Cal. 1972), this court has indicated a willingness to consider a broader application. *Lewis v. D. C. Dep't of Corrections*, 174 U.S.App.D.C. 483, 484, 533 F.2d 710, 711 (1976); *Apton v. Wilson, supra* note 27, 165 U.S.App.D.C. at 34–35, 506 F.2d at 95–96; *Cardinale v. Washington Technical Inst., supra* note 31, 163 U.S.App.D.C. at 128 n.5, 500 F.2d at 796 n.5. Other courts have applied *Bivens* expansively to a variety of constitutional provisions. *United States ex rel. Moore v. Koelzer*, 457 F.2d 892, 894 (3d Cir. 1972) (Fifth Amendment); *Bethea v. Reid*, 445 F.2d 1163, 1164–1165 (3d Cir. 1971), cert. denied, 404 U.S. 1061, 92 S.Ct. 747, 30 L.Ed.2d 749 (1972) (Fourth and Fifth Amendments); *States Marine Lines v. Shultz*, 498 F.2d 1146, 1156–1157 (4th Cir. 1974) (Fifth Amendment); *Revis v. Laird*, 391 F.Supp. 1133, 1138–1139 (E.D.Cal.1975) (First and Fifth Amendments); *Butler v. United States*, 365 F.Supp. 1035, 1039–1040 (D.Haw.1973) (First Amendment); *Patmore v. Carlson*, 392 F.Supp. 737, 739–740 (E.D.Ill.1975) (Fifth and Eighth Amendments). See also *Jones v. Perrigan*, 459 F.2d 81 (6th Cir. 1972) (false imprisonment and malicious prosecution). One court has declared that "*Bivens* recognizes a cause of action for damages for violation of any constitutionally protected interest." *Gardels v. Murphy*, 377 F.Supp. 1389, 1398 (N.D.Ill.1975).

50. See note 49 *supra*.

51. *Bell v. Hood, supra* note 15, 327 U.S. at 682, 66 S.Ct. at 776, 90 L.Ed. at 943, quoted in text *supra* at note 24; *Lewis v. D. C. Dep't of Corrections, supra* note 49, 174 U.S.App.D.C. at 484, 533 F.2d at 711; *Apton v. Wilson, supra* note 27, 165 U.S.App.D.C. at 35, 506 F.2d at 96; *Cardinale v. Washington Technical Inst., supra* note 31, 163 U.S.App.D.C. at 128 n.5, 500 F.2d at 796 n.5.

52. See cases cited *supra* notes 20, 24, 51.

53. *Hagans v. Lavine, supra* note 38, 415 U.S. at 543, 94 S.Ct. at 1382, 39 L.Ed.2d at 591, quoting *Oneida Indian Nation v. County of Oneida, supra* note 40, 414 U.S. at 666–667, 94 S.Ct. at 777, 39 L.Ed.2d at 78–79.

54. See text *supra* at notes 11–14.

## II

The second precondition to invocation of Section 1331(a) as a jurisdictional predicate is that "the matter in controversy exceed[ ] the sum or value of $10,000, exclusive of interest and costs." [55] In their complaint, each of the four appellants sought $15,000 in compensatory damages and a like amount in punitive damages. To the District Court, "[i]t appear[ed] . . . to a legal certainty that no [appellant] . . . [was] entitled to or could properly recover a judgment in excess of $10,000." [56] To me, however, that assessment is not nearly so clear.

■ The basic principles governing determination of amount in controversy are well settled. On that score "[t]he rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." [57] Thus an allegation in the plaintiff's complaint that the amount in controversy surpasses the statutory figure suffices [58] unless disputed by his opponent or by the court *sua sponte*.[59] And even in the event of a challenge, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." [60]

■ Appellants' complaint alleges, in essence, that Officer Lea pointed and several times fired a revolver at them. Not only do they say that they were then conducting themselves in a peaceful and lawful manner but they specifically charge that the officer acted wilfully and maliciously. They say, too, that the officer's conduct was deliberately calculated to place them in apprehension of being shot, and that resultantly they experienced severe mental anguish. In sum, they seek damages for an allegedly unprovoked and unjustified assault with a deadly weapon by a police officer intent on injuring them or at least putting them in fear of death or serious bodily harm.[61] It

**55.** See note 5 *supra*.

**56.** J.App. 40.

**57.** *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845, 848 (1938) (footnotes omitted). See also cases cited *infra* notes 58–59.

**58.** *Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111, 1115 (1939); *St. Paul Mercury Indem. Co. v. Red Cab Co., supra* note 57, 303 U.S. at 288–289, 58 S.Ct. at 590, 82 L.Ed. at 848; *Smithers v. Smith*, 204 U.S. 632, 642, 27 S.Ct. 297, 299, 51 L.Ed. 656, 660 (1907).

**59.** *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 277–278, 57 S.Ct. 197, 200–201, 81 L.Ed. 183, 187–188 (1936); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 184, 56 S.Ct. 780, 782–783, 80 L.Ed. 1135, 1138–1139 (1936). See also *St. Paul Mercury Indem. Co. v. Red Cab Co., supra* note 57, 303 U.S. at 289, 58 S.Ct. at 590, 82 L.Ed. at 848. Upon a challenge, it is the plaintiff's burden to show that it does not appear to a legal certainty that the claim is for less than the jurisdictional amount. *Gibbs v. Buck, supra* note 58, 307 U.S. at 72, 59 S.Ct. at 729, 83 L.Ed. at 1115; *McNutt v. General Motors Acceptance Corp., supra*, 298 U.S. at 189, 56 S.Ct. at 785, 80 L.Ed. at 1141.

**60.** *St. Paul Mercury Indem. Co. v. Red Cab Co., supra* note 57, 303 U.S. at 289, 58 S.Ct. at 590, 82 L.Ed. at 848–849. See to the same effect, *Hartigh v. Latin, supra* note 26, 158 U.S.App.D.C. at 293, 485 F.2d at 1071; *Gomez v. Wilson, supra* note 26, 155 U.S.App.D.C. at 251, 477 F.2d at 420. See also cases cited *supra* notes 58–59.

**61.** Several months prior to the judgment of dismissal, the District of Columbia inaugurated discovery proceedings, during the course of which interrogatories were addressed to appellants and each was deposed. Appellants' answers to the interrogatories were on file before the judgment was entered but the District Court's docket indicates that the transcribed depositions did not arrive until two days later. From appellants' responses to searching inquiries, this court obtained a detailed account of the incident of which they complain.

Appellants were seated in their car, two in front and the other two in the rear, engaging in conversation. The car was double-parked next to Officer Lea's car. When they saw him approaching, their car was backed up to allow him to enter his car. The officer was dressed in civilian clothes and they did not know he was a policeman. Officer Lea got out of his car, walked back to appellants' car with a gun in his hand, approaching on the passenger side. The driver, Preston Martin, did not see the gun at first, but Larry Jones and Parney Jenkins, seated on the passenger side, spotted it immediately. Officer Lea ordered everyone to get

can hardly be gainsaid that these events, if proven to the satisfaction of a jury, would likely produce verdicts for sizeable damages in their favor. That a viable defense to appellants' lawsuit may be proffered does not affect the question of amount in controversy.[62]

■■■ I realize that appellants are not permitted to aggregate their claims in order to make up the jurisdictional amount.[63] But I cannot subscribe to the District Court's unelucidated conclusion[64] that no appellant has any chance whatever of meeting the statutory mandate in this regard. On the contrary, my appraisal of the situation portrayed by the record in its present posture leaves me with the conviction that each of the appellants possibly could.

■■■ It goes without saying that for any physical injury and any financial loss associated therewith, compensatory damages may be awarded. It is equally clear that for an armed attack creating substantial apprehension of personal harm—the emotional reaction anciently redressable in an action for assault[65]—compensatory damages are similarly awardable.[66] And since it may ultimately be found that constitutional rights were infringed,[67] compensation therefor must likewise be counted toward jurisdictional amount.[68] In addition to these components, the aggravated nature of the alleged attack portends an allowance of punitive damages,[69] which may properly in-

out of the car, threatening to blow off their heads if they did not obey.

Hearing the officer shouting at the occupants and realizing that he was trying to get into the car, Martin "immediately drove off to escape from what appeared to be a crazed man trying to harm the occupants of the vehicle which he was driving." Answer to Interrogatory No. 49. Officer Lea fired several shots into the car; appellants are unsure of the exact number, but believe it was approximately six. One bullet struck the right passenger window, knocking it out; another bullet penetrated the speedometer and still another went through the back window. No one in appellants' vehicle had a weapon; a test ordered by police showed that none of the appellants had fired a weapon.

Appellants left the scene immediately to find a policeman and at a nearby parking lot found two and informed them of the incident. Larry Jones was taken by one of the policemen to a hospital for treatment for cuts he sustained from flying glass. The other three appellants remained at the police car at the parking lot for about twenty minutes, and then they went to a police station.

**62.** *St. Paul Mercury Indem. Co. v. Red Cab Co., supra* note 57, 303 U.S. at 298, 58 S.Ct. at 590, 82 L.Ed. at 848; *Smithers v. Smith, supra* note 58, 204 U.S. at 642, 27 S.Ct. at 299, 51 L.Ed. at 660; *Schunk v. Moline, Milburn & Standard Co.,* 147 U.S. 500, 505, 13 S.Ct. 416, 417, 37 L.Ed. 255, 258 (1893).

**63.** *Zahn v. International Paper Co.,* 414 U.S. 291, 294–296, 94 S.Ct. 505, 508–509, 38 L.Ed.2d 511, 515–516 (1973); *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319, 323 (1969); *Pinel v. Pinel,* 240 U.S. 594, 596, 36 S.Ct. 416, 417, 60 L.Ed. 817, 818 (1916).

**64.** The District Court's judgment of dismissal is unaccompanied by an explanatory opinion or

memorandum. In cases involving cognate jurisdictional-amount rulings, we have indicated the desirability of explanation as an aid to review. See *Davis v. Peerless Ins. Co.,* 103 U.S.App.D.C. 125, 127–128 & n.6, 255 F.2d 534, 535–536 & n.6 (1958). See also *Block v. District of Columbia,* 160 U.S.App.D.C. 380, 384, 492 F.2d 646, 650 (1974).

**65.** See W. Prosser, Torts § 10 at 37, 38 (3d ed. 1964); Restatement (Second) of Torts §§ 21–29 (1965).

**66.** *E. g., Bullock v. Tamiami Trail Tours, Inc.,* 266 F.2d 326, 332 (5th Cir. 1959) (applying Florida law); *Tollett v. Mashburn,* 183 F.Supp. 120, 126 (W.D.Ark.1960), aff'd, 291 F.2d 89 (8th Cir. 1961) (applying Arkansas law). And "in assessing . . . actual damages it [is] proper to take into account any injury suffered in body or mind, and to consider the humiliation and outrage to which [the victim] may have been subjected, to the end that [he] might be fairly compensated under all the circumstances of the case." *Axman v. Washington Gaslight Co.,* 38 App.D.C. 150, 160 (1912).

**67.** See text *supra* at notes 27–28, 40.

**68.** See *Hartigh v. Latin, supra* note 26, 158 U.S.App.D.C. at 293, 485 F.2d at 1072; *Wolff v. Selective Serv. Local Bd. No. 16,* 372 F.2d 817, 826 (2d Cir. 1967). See also note 32 *supra.*

**69.** See, *e. g., Chesapeake & Potomac Tel. Co. v. Clay,* 90 U.S.App.D.C. 206, 209, 194 F.2d 888, 891 (1952). Punitive damages need not bear any necessary relationship to compensatory damages. *Afro-American Publishing Co. v. Jaffe,* 125 U.S.App.D.C. 70, 83, 366 F.2d 649, 652 (1966); *Wardman-Justice Motors v. Petrie,* 59 App.D.C. 262, 266, 39 F.2d 512, 516, 69

clude counsel fees and other costs,[70] and thus still another element of possibly recoverable damages emerges.[71] That an appellant might actually realize less than $10,-000, or indeed nothing at all, does not affect the question.[72]

To be sure, any endeavor to set a monetary value on intangibles is apt to encounter some difficulty. But the judicial function beckoned here is not tied to a presently unattainable degree of mathematical exactitude. While, of course, the valuation must be more than speculative,[73] it suffices that there is some probability that the subject matter of the suit is worth at least the statutory minimum,[74] and there are guideposts pointing to that possibility here.[75] At

A.L.R. 648 (1930). Since these principles may intercept Officer Lea, I need not pause to consider whether they extend to the District of Columbia also. Officer Lea remains a party to this case, see note 6 *supra,* and as we hold today, so does the District. With federal jurisdiction over them the District Court would have pendent jurisdiction for purposes of any application of the doctrine of respondeat superior. *Hagans v. Lavine, supra* note 38, 415 U.S. at 536, 94 S.Ct. at 1378, 39 L.Ed.2d at 587; *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 380–381, 79 S.Ct. 468, 484–485, 3 L.Ed.2d 368, 386–387 (1959); *Hartigh v. Latin, supra* note 26, 158 U.S.App.D.C. at 293, 485 F.2d at 1072. See also note 77 *infra.*

70. *Afro-American Publishing Co. v. Jaffe, supra* note 69, 125 U.S.App.D.C. at 83, 366 F.2d at 652.

71. *Bell v. Preferred Life Assurance Soc'y,* 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15, 18 (1943); *James v. Lusby, supra* note 26, 162 U.S.App.D.C. at 357, 499 F.2d at 493; *Hartigh v. Latin, supra* note 26, 158 U.S.App.D.C. at 292–293, 485 F.2d at 1071–1072.

72. *Rosado v. Wyman,* 397 U.S. 397, 405 n.6, 90 S.Ct. 1207, 1214 n.6, 25 L.Ed.2d 442, 451 n.6 (1970); *St. Paul Mercury Indem. Co. v. Red Cab Co., supra* note 57, 303 U.S. at 289, 58 S.Ct. at 590, 82 L.Ed. at 848–849.

73. See *Hartigh v. Latin, supra* note 26, 158 U.S.App.D.C. at 293, 485 F.2d at 1072.

74. *Aetna Cas. & Sur. Co. v. Flowers,* 330 U.S. 464, 468, 67 S.Ct. 798, 800, 91 L.Ed. 1024, 1027 (1947); *Gomez v. Wilson, supra* note 26, 155 U.S.App.D.C. at 251 n.51, 477 F.2d at 420 n.51; *Friedman v. Machinists Int'l,* 95 U.S.App.D.C. 128, 130, 220 F.2d 808, 810, *cert. denied,* 350 U.S. 824, 76 S.Ct. 51, 100 L.Ed. 736 (1955).

75. The only appellant injured physically by the shooting was Larry Jones, who received cuts—"a multitude of cuts . . . all over my face," Deposition at 10–11—from flying glass when the windshield of the car was struck by a bullet. In his deposition Jones stated that he applied medication to his eyes for about two weeks, and that for the year preceding his deposition experienced occasional eye pain and blurry vision. Jones also testified that his nose was sore for several months after the incident because, he believed, a small piece of glass was lodged therein. Jones also states that for three or four months after the shooting episode he felt humiliated by the condition of his face.

Jones' medical expense was $24 for emergency room treatment plus some unspecified amount for a prescription. The only other monetary outlay thus far identified by any appellant is $50, which each paid "for legal services in connection with this incident." Answer to Interrogatory No. 22. It seems that aside from Jones' emergency treatment, there has been little effort to benefit from medical attention.

In respects other than this relatively small amount of special damages, however, appellants' prospects for substantial recoveries are much brighter. Their statements on the record, if believed by a jury, would leave no doubt that the shooting placed them in abject terror of imminent death or injury, and that the effects were considerably more than momentary. Preston Martin, operator of the car, was "fearful for his life and the life of his passengers," and "immediately drove off to escape what appeared to be a crazed man." Answer to Interrogatory No. 49. He himself "was scared from it, I was scared, I was scared." Deposition at 30. Larry Jones also was "scared for a good little while," Deposition at 39; Franklin Payne said that "it scared me. . . . It scared me a whole lot," Deposition at 48; and Parney Jenkins "was so scared to a point . . . where I had a nervous breakdown." Deposition at 43. These are but samples of the testimony on that score. See generally Jury-Verdict Research, Inc., 2A Personal Injury Valuation Handbooks, Rep't No. 125, at 1064–1066 (1970).

Moreover, should Officer Lea's alleged tort later be accorded constitutional magnitude, see Part I *supra,* the value placed on the rights violated could well be high. Compare *Sullivan v. Murphy, supra* note 26, 156 U.S.App.D.C. at 40–41 n.34, 478 F.2d at 960–961 n.34; *Walker v. McCune,* 363 F.Supp. 254, 255 (E.D.Va.1973). And lest we forget, punitive damages loom large in circumstances such as those represented here. See notes 68–71 *supra* and accompanying text.

In *James v. Lusby, supra* note 26, this court sustained a holding that the amount in contro-

bottom, I cannot say "to a legal certainty that [appellants'] claim[s] [are] really for less than the jurisdictional amount." [76]

I conclude, then, that both preconditions specified by section 1331(a) are satisfied and that consequently the District Court has jurisdiction of this litigation.[77]

TAMM, Circuit Judge, concurring:

 I concur in the result reached by the court in this case but wish to elucidate the reasoning that leads me to do so. In my view, it is essential to appellants' successful invocation of general federal question jurisdiction, 28 U.S.C. § 1331(a) (1970), that they make out a nonfrivolous claim that Lea was acting under color of his authority as a "federal" police officer at the time of this incident.[1] If the district court could have concluded from the pleadings and evidence properly before it that Lea was clearly not acting as a governmental agent, I could readily affirm its dismissal of this action for failure to satisfy either the "case arising" or amount in controversy requirements. After a thorough review of the record on appeal, however, I find that

sufficient doubt remains as to the capacity in which Lea was acting to preclude a dismissal for lack of jurisdiction.

I

 Every case in which the pleadings allege a claim under federal law does not automatically come within section 1331(a) jurisdiction, even though the amount in controversy requirement has been satisfied. In *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the Supreme Court expressly stated that a suit may sometimes be dismissed for want of federal question jurisdiction

> where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

*Id.* at 682–83, 66 S.Ct. at 776. The standard for want of "substantiality" is a stringent one, and "if there is any foundation of plausibility to the claim federal jurisdiction exists." 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3564,

---

versy did not exceed $10,000. The claimant had been involved in a verbal altercation with a police officer, following which he was arrested, handcuffed, incarcerated briefly and later convicted of disorderly conduct upon a forfeiture of collateral. On the record, we concluded that the claimant's own contribution to the affair foreclosed punitive damages; that the claimant had failed to mitigate the impact of the events complained of; that although he averred welts on his wrist from the handcuffing, he admittedly did not seek medical attention; and, quite importantly, he denied that he was mentally distressed by the incident. 169 U.S.App.D.C. at 357, 499 F.2d at 493. The record before us does not indicate the magnitudinous deficiencies uncovered there.

**76.** See text *supra* at note 60.

**77.** The District has not raised the question whether its exclusion from liability under 42 U.S.C. § 1983 (1970), *District of Columbia v. Carter, supra* note 12, impairs resort to § 1331(a) for jurisdiction against it. *Cf. Mt. Healthy School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 276–279, 97 S.Ct. 568, 570–572, 50 L.Ed.2d 471, 477–479 (1977). As that "question goes not to the District Court's jurisdiction but to the merits," *Apton v. Wilson, supra* note

27, 165 U.S.App.D.C. at 35, 506 F.2d at 96, I do not reach it here.

**1.** Police officers of the District of Columbia are not considered employees of the United States, at least for certain purposes. *See Bradshaw v. United States*, 143 U.S.App.D.C. 344, 443 F.2d 759, 766 (1971). Actions may nevertheless be brought under § 1331(a) against District of Columbia officials, even though they are acting in a purely local capacity. *Apton v. Wilson*, 165 U.S.App.D.C. 22, 506 F.2d 83, 96 (1974); *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 478 F.2d 938, 960, *cert. denied*, 414 U.S. 880 (1973); *see District of Columbia v. Carter*, 409 U.S. 418, 432–33, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). Whether or not the District of Columbia, itself, can be sued for the tortious acts of its employees where the remedy is implied directly from the Constitution is an issue which has not been decided by this court, although it has been raised. *Apton, supra*, 165 U.S.App.D.C. at 36, 506 F.2d at 96. *See also Shifrin v. Wilson*, 412 F.Supp. 1282, 1305–06 (D.D.C.1976). In any case, that issue addresses the merits and not the scope of the jurisdiction conferred on the district court by § 1331(a). *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 839 (1946); *Lewis v. D.C. Department of Corrections*, 174 U.S.App.D.C. 483, 533 F.2d 710, 711–12 (1976).

at 428 (1976) [hereinafter Wright]; *see Hagans v. Lavine*, 415 U.S. 528, 539–41, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Montana Catholic Missions v. Missoula County*, 200 U.S. 118, 130, 26 S.Ct. 197, 50 L.Ed. 398 (1906).

 The constitutional claim raised by the appellants in this case certainly cannot be labelled "wholly insubstantial and frivolous", since *Bell v. Hood, supra*, clearly held that a federal court can grant money damages to redress the violation by a federal officer of a person's fifth amendment rights. 327 U.S. 683–84, 66 S.Ct. 773. However, the mere allegation by a plaintiff that a defendant was acting as a governmental agent should not suffice *ipso facto* to avoid the other exceptions delimited by *Bell*. This court has made it very clear that for federal jurisdiction to attach, "it is necessary to show that the Government exercises some form of control over the actions of [a] private party." *Spark v. Catholic University of America*, 167 U.S.App.D.C. 56, 510 F.2d 1277, 1282 (1975). This requirement may pose a substantial hurdle for a plaintiff where the defendant is distinctly a private entity, such as a private university, hospital or restaurant. *See, e.g., Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Wahba v. New York University*, 492 F.2d 96 (2d Cir.), *cert. denied*, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974). Though the status of an off-duty policeman may be a somewhat easier case, I see no reason why a court should automatically hold that the requirement of governmental involvement is met simply because a defendant is employed by the government. The record in any given

case may well disclose that a defendant clearly was not acting as a governmental agent, in which case a district court must conclude that the constitutional claim was "made solely for the purpose of obtaining jurisdiction" and must dismiss the action for lack of any plausible nexus between the constitutional right and its violation by the government. Otherwise a plaintiff could merely assert a "substantial" but factually baseless federal claim so as to seek adjudication of a related state law claim under a federal court's pendent jurisdiction, even though the federal claim was dismissed on the merits. *See* ALI, Study of the Division of Jurisdiction Between State and Federal Courts 177 (1969).

The court's opinion refers throughout to Lea as "Officer Lea" or as the "police officer", apparently assuming straightway that he was acting in his capacity as a police officer throughout the incident in question. Even though the record permits only a sketchy reconstruction of the factual background, it contains considerable evidence to indicate that Lea was, in fact, not acting in his official capacity. It is undisputed [2] that at the time of the shooting Lea had been off duty for at least forty-five minutes,[3] was driving his own car,[4] was dressed in mufti,[5] and was simply attempting to investigate the possible theft of certain items from his car.[6] Appellants apparently never even realized that he was a police officer until sometime after they had reported the incident.[7]

Without more, I would have to conclude that there was no governmental involvement in this incident and that, therefore,

2. *But cf.* Record, Document No. 25, at 1–4.

3. Answers 3 and 7 to Interrogatories of the Chief of Investigations, Office of the Corporation Counsel, District of Columbia; Record, Document No. 25, at 1–2. *Cf.* Payne Deposition 17–18.

4. Answers 32, 34, and 49 to Interrogatories of Plaintiffs; Record, Document No. 35, at 5. Unsigned Statements of Plaintiffs taken on Dec. 16, 1972, by the Metropolitan Police Department (Fourth District); Record, Document No. 25, at 1–4. Payne Deposition 24–25.

5. Answer 33 to Interrogatories of Plaintiffs; Record, Document No. 35, at 5. Jenkins Deposition 23; Martin Deposition 15, 28; Jones Deposition 25–26, 46; Payne Deposition 23–24.

6. Supplementary Statement taken from Officer Lea on Dec. 20, 1972; Record, Document No. 25, at 2.

7. Jenkins Deposition 17, 21–22, 25–27, 35; Martin Deposition 32; Jones Deposition 54; Payne Deposition 24–26, 38. *Cf.* Martin Deposition 26; Jones Deposition 27–30.

appellants' constitutional rights could not have been violated by Lea's actions as a private individual except on thirteenth amendment grounds.[8] If such were the case, appellants' constitutional claim would clearly be implausible and subject to jurisdictional dismissal. There is more, however. The bullets were fired from a service revolver.[9] What makes the real difference though, in my opinion, is the fact that the record contains no indication whatsoever that the District of Columbia ever denied, either specifically or indirectly, that Lea's actions were related to his official duties.

Paragraph six of the Complaint, for instance, expressly alleges that Lea was a "duly appointed and qualified police officer of the Metropolitan Police Department . . . and acting in the course of his employment and engaged in the course of his duties as a police officer."[10] Record, Document No. 1, at 2. The District of Columbia's Answer, however, fails to deny that Lea was acting under color of his official authority. It merely comments that the allegation was a "conclusio[n] of the pleader requiring no answer." Record, Document No. 3, at 2. In the same vein, Interrogatory Eight directed to the District of Columbia requested that the government "[s]tate with particularity that [sic] facts you intend to rely upon to support your allegation that all actions taken by the District of Columbia *or its agents* with regard to the Plaintiffs were proper, legally sanc-

tioned and justified." Record, Document No. 20, at 2 (emphasis added). The government only answered that Lea "discharged his service revolver to defend himself from harm. . . ." Record, Document No. 25, at 2. This reply makes no attempt to deny that Lea was acting as an agent of the District of Columbia and might even be read as pregnant with an admission that he was. Finally, the record also contains four *unsigned* "Statements" of the several appellants prepared by the police, all of which are replete with dubious "admissions" to the effect that Lea unmistakenly was wearing his uniform, showed his badge and otherwise identified himself as a police officer prior to the shooting. Record, Document No. 25, at 1–4. In view of these rather vague indications that Lea may have been acting as a governmental agent and mindful that jurisdictional dismissals are not favored, I cannot agree with the district court that the appellants "have failed to allege or indicate any circumstances which raise their claim to a constitutional dimension sufficient to confer jurisdiction on [it]." J.A. 40.

## II

Even though these claims of constitutional tort survive the exceptions set forth in *Bell v. Hood, supra,* appellants can still not invoke general federal question jurisdiction unless they also satisfy the $10,000 amount in controversy requirement of section

8. This case is decidedly not a *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), or a *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) type situation where the nexus between the constitutional interest and its violation under color of governmental authority is clear. In *Bivens* agents of the Federal Bureau of Narcotics manacled petitioner in front of his family and, after searching the apartment, took him to a federal courthouse where he was interrogated and subjected to a visual strip search. 403 U.S. at 389, 91 S.Ct. 1999. In *Monroe* 13 Chicago police officers broke into a home in the early morning, drove the occupants from bed and forced them to stand naked while every room was ransacked, after which petitioner was interrogated incommunicado at the police station.

9. I am disinclined to impart much constitutional relevance to this fact alone. Members of the Metropolitan Police Department must carry their service revolvers whether on duty or off. *D.C. Govt., Metropolitan Police Dept. Manual* § 2.3:1, at 10 (1972). The circumstances surrounding the use of a service revolver, rather than the mere fact of its use, have constitutional relevance. *See Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir. 1975), *cert. dismissed,* 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976). Surely one could not reasonably maintain that an off-duty police officer whose revolver accidentally discharged and hurt someone was acting under color of governmental authority.

10. This allegation, moreover, was repeated by appellants in their answers to interrogatories. Answer 43 to Interrogatories of Plaintiffs; Record, Document No. 35, at 7.

1331(a).[11] Each of the four appellants demands $15,000 in compensatory and $15,000 in punitive damages. Appellants may not aggregate their claims to make up the jurisdictional amount; it must appear that each and every one of them satisfies the requirement. *Zahn v. International Paper Co.*, 414 U.S. 291, 294–95, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). The allegations of the complaint are not conclusive on the question of whether the requisite amount has been met, but, in finding that it has not been, a court must conclude "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), *quoted in Apton v. Wilson*, 165 U.S.App.D.C. 22, 506 F.2d 83, 95 (1974).

The valuation problem in this case is more difficult than Judge Robinson's opinion seems to intimate. There were only $24 in special damages arising from the shooting: an emergency room charge for treating one of the appellants for superficial facial lacerations from flying glass.[12] Only one of the appellants sustained any physical injury, and none of them appears to have suffered any significant emotional injury, though each alleges "mental anguish". From my reading of the depositions, the physical injury appears relatively minor, notwithstanding the injured appellant's testimony that it caused his vision to become impaired occasionally. Record, Document No. 32, at 14–15. The emotional injuries alleged do not seem very convincing, though surely some degree of "mental anguish" must be accepted as only natural under the circumstances.[13]

While I believe that the district court would not have abused its discretion in holding that the physical and emotional injuries to appellants clearly did not satisfy the jurisdictional amount requirement, the question still remains whether their punitive damage claims and the alleged violation of their constitutional interests are sufficient to carry the matter in controversy across the $10,000 threshold. Both compensatory and punitive damage claims are generally to be considered in this determination, *Bell v. Preferred Life Assurance Co.,*

11. The jurisdictional amount requirement of § 1331(a) was recently eliminated by Congress where the "action [is] brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." Act of Oct. 21, 1976, Pub. L. No. 94–574, § 2, 90 Stat. 2721. The applicability of this revision to the pending litigation need not be addressed in view of our holding that, in any case, appellants have met the jurisdictional amount requirement.

12. In another case of analogous procedural posture where an appellant prayed for $100,000 in compensatory damages for alleged violation of his constitutional rights, but coincidentally had sustained only $24 of medical bills, this court understatedly remarked that "[i]n view of these very limited medical injuries, there may arise some question of the amount in controversy." *Hartigh v. Latin*, 158 U.S.App.D.C. 289, 485 F.2d 1068, 1072 (1973), *cert. denied, Columbia v. Marsh*, 415 U.S. 948, 94 S.Ct. 1470, 39 L.Ed.2d 564 (1974).

13. The following deposition testimony of one of the appellant's is typical of that of the other three:

Q. What complaints did you have, physical and mental, five minutes after this took place?
A. All kinds.
Q. Like what?
A. I was sitting in the police precinct and I found—
Q. Five minutes right after.
A. Oh, what complaints?
Q. Yes.
A. All kinds of complaints because . . . a lot of stuff ran across my mind because I wasn't doing a thing but sitting.
Q. Did you feel any pain, physical pain?
A. I don't know . . . I can't remember.
Q. How about ten minutes after?
A. I don't know. I still can't remember. Yes, I felt a little pain because I was sitting on some glass. Yes, I felt something.
Q. Twenty minutes later?
A. I don't remember.

Jenkins Deposition 54–55. Despite the improbability of evaluating credibility from a printed record, I nevertheless have the distinct impression from portions of this same deposition that appellant's testimony as to his "mental anguish" may have involved considerable exaggeration. *See id.* at 43–51. The same may not unfairly be said of much of the other testimony. *See, e.g.,* Martin Deposition 30–32; Payne Deposition 46–52; Jones Deposition 39–40.

320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943), and the amount of the latter need not have any necessary relation to the former. *Wardman-Justice Motors v. Petrie*, 59 App.D.C. 262, 39 F.2d 512, 515–16 (1930); *see Afro-American Publishing Co. v. Jaffe*, 125 U.S.App.D.C. 70, 366 F.2d 649, 662 (1966) (en banc).

■ These punitive damage claims of the appellants though do not have any talismanic effect. The law does not favor punitive damages but will award them to punish and deter intentional and aggravated wrongdoing that evidences a conscious disregard for another's rights. *E. g., Brown v. Coates*, 102 U.S.App.D.C. 300, 253 F.2d 36, 39–40 (1958); *Mills v. Levine*, 98 U.S.App. D.C. 137, 233 F.2d 16, *cert. denied*, 352 U.S. 858, 77 S.Ct. 86, 1 L.Ed.2d 67 (1956). Assuming the worst, as we must on this appeal, the actions of Lea were outrageous and life-endangering, though their consequences were fortunately slight. In the usual case, which the one now before us clearly is not, I might readily agree with Judge Robinson's conclusion here that appellants' allegations make out at least a colorable claim for some punitive damages, and that must be considered as another input into the valuation calculus. *Bell, supra.*

It is not clear to me, however, that punitive damages are available where, in the absence of statutory authorization of traditionally available remedies, the remedies sought for alleged constitutional violations must be implied directly from the terms of the Constitution. In the germinal case, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that money damages may be recovered for any injury suffered as a result of a violation of the fourth amendment. *Id.* at 397, 91 S.Ct. 1999. There was no mention whatsoever in *Bivens* of the possible availability of punitive damages by way of such a federal cause of action.

The decisions of this circuit on this particular question appear to be in conflict. For instance, in *Hartigh v. Latin*, 158 U.S.App. D.C. 289, 485 F.2d 1068 (1973), *cert. denied, Columbia v. Marsh*, 415 U.S. 948, 94 S.Ct. 1470, 39 L.Ed.2d 564 (1974), where recovery was sought under a *Bivens* theory, a panel of this court held that punitive damages are to be included in determining the jurisdictional amount under section 1331(a).[14] *Id.* at 1072. In another decision, however, this court appears to have expressly limited the remedies available under the *Bivens* decision to compensatory damages. *Zweibon v. Mitchell*, 170 U.S.App.D.C. 1, 516 F.2d 594, 659 (1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 187 (1976), and this position is not inconsistent with the rationale advanced for the Court's holding in *Bivens. See Bivens, supra*, 403 U.S. at 395– 97, 91 S.Ct. 1999. Justice Harlan in his concurring opinion, for instance, fairly characterized the essential question facing the Court concerning damages as "whether compensatory relief is 'necessary' or 'appropriate' to the vindication of the interest asserted." *Bivens, supra*, at 407, 91 S.Ct. at 2010 (Harlan, J., concurring). Whether or not "vindication" is limited to compensation must remain for now an open question. It could well be argued though that punitive damages are unnecessary to the vindication of constitutional interests because their justificatory functions of deterrence and punishment might just as well be served by according the victims of constitutional violations compensatory damages,[15] *see id.* at

---

**14.** *See also Hanna v. Drobnick*, 514 F.2d 393, 398 (6th Cir. 1975).

**15.** Punitive damages may serve an especially salutory end in deterring the unconstitutional actions of government officials. In fact, in England where the exemplary principle in civil suits was first recognized, this remains one of the few instances in which punitive damages are still awarded. *See Rookes v. Barnard*

[1964] A.C. 1129, 1226, where Lord Devlin remarks:

> [T]here are certain categories of cases in which an award of exemplary damages can serve a useful purpose in vindicating the strength of the law and thus affording a practical justification for admitting into the civil law a principle which ought logically to belong to the criminal. . . . The first category is oppressive, arbitrary or unconstitu-

407–08, 91 S.Ct. 1999, especially where the lack of clear standards in setting compensation in any given case may permit amplification of an award on exemplary grounds anyway.[16] At least in such a case as this one, too, illegal actions may subject the governmental agent to the possibility of criminal prosecution,[17] which should serve similar if not, perhaps, as effective a deterrent purpose.

While it may someday be settled that punitive damages are an additional type of permissible relief afforded by *Bivens* and its descendants—perhaps even as an appropriate substitute deterrent for the exclusionary rule—I do not believe that such is necessarily the better rule; nor does the question warrant further examination in light of the procedural posture of this case and the ultimate conclusion I reach on the jurisdictional amount issue.

In my view, appellants' case must thus survive or perish on the valuation to be accorded the alleged violation of their constitutional interests. Some courts have flatly decreed that constitutional rights are worth more than $10,000,[18] though Professor Wright notes approvingly that "the great majority of courts have resisted this temptation and have declined the invitation to invent jurisdiction for themselves that Congress has not yet seen fit to grant."

Wright, *supra*, § 3561, at 395; *see, e.g. Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1201 n.10 (9th Cir. 1975).

This is not to say, however, that the valuation of constitutional rights in dollars and cents should be ignored simply because it may be difficult. In fact, decisions of this circuit have been more generous than stingy in valuing basic civil rights. In *Gomez v. Wilson*, 155 U.S.App.D.C. 242, 477 F.2d 411, 420 n.51 (1973), *quoted in Committee For GI Rights v. Callaway*, 171 U.S.App. D.C. 73, 518 F.2d 466, 472 (1975), for example, this court articulated the applicable principle as follows:

> Although the value of certain rights may be difficult of precise measurement, that difficulty does not make the claim nonjusticiable under Section 1331(a). . . . Absolute certainty as to the amount is not essential; it suffices that there is a present probability that the damages or the right sought to be protected meet the statutory requirement.

Thus, for jurisdictional purposes, this court has found that some twelve hours of alleged false imprisonment sufficed by itself to satisfy the $10,000 amount requirement. *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 478 F.2d 938, 960–61 n.34, *cert. denied*, 414

tional action by the servants of the government. . . . [T]he servants of the government are also the servants of the people and the use of their power must always be subordinate to their duty of service.

In this country, nevertheless, punitive damages have traditionally been considered foreign to equitable relief, *see* D. Dobbs, Remedies 211–12 (1973), and Justice Harlan makes clear that the scope of the Court's "equitable remedial discretion" in fashioning the *Bivens* remedy was "determined according to the distinctive historical traditions of equity as an institution. . . ." *Bivens*, 403 U.S. *supra* at 404, 91 S.Ct. at 2009 (Harlan, J., concurring). Furthermore, the punitive liability of governmental entities, such as the District of Columbia, has often been very limited, even where sovereign immunity has been abolished or does not otherwise apply. *See* Dobbs, *supra* at 217–18.

16. *Cf.* Wm. Shakespeare, Romeo and Juliet, Act ii, sc. 2, 1.42:

What's in a name? that which we call a [thorn]

By any other name would [hurt] as [much].

17. Section 4–176 of the District of Columbia Code provides that "[a]ny officer who uses unnecessary and wanton severity in arresting . . . any person shall be deemed guilty of assault and battery, and, upon conviction, punished therefor." D.C.Code § 4–176 (1973).

18. *E.g., Cortright v. Resor*, 325 F.Supp. 797, 810 (E.D.N.Y.) *rev'd on other grounds*, 447 F.2d 245 (2d Cir. 1971), *cert. denied*, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972), where the district court stated:

A monetary price can hardly be placed on the rights guaranteed by the First Amendment. To say that these priceless rights so many have fought and died to protect are worth nothing is to insult the basic principles upon which this nation was founded. . . . Free speech is almost by definition, worth more than $10,000, so that the allegation of jurisdiction based upon 1331 ought not to be subject to denial.

U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973). Similar valuations were reached in *Apton v. Wilson*, 165 U.S.App.D.C. at 34, 506 F.2d *supra* at 95 (fourth and fifth amendment violations) and *Hartigh v. Latin, supra*, 158 U.S.App.D.C. at 293, 485 F.2d at 1072 (fifth and eighth amendment violations).

█ There may well be a "national trend toward increasing awards in cases alleging . . . police misconduct," *see James v. Lusby*, 162 U.S.App.D.C. 352, 499 F.2d 488, 493 (1974), which would lend support to these decisions. The determination of the jurisdictional amount must nevertheless be judged predominately on the facts of a particular case as they appear in the record. The essential probative facts in this case are not uncontested, as they were in *James v. Lusby, supra*, where this court held that the jurisdictional amount had not been satisfied despite allegations to the contrary. Indeed, the single most important ultimate fact in this case—whether or not Lea's shots were in self-defense—is vigorously disputed. Against this background, the amount in controversy valuation poses a close question, as the Corporation Counsel for the District of Columbia admitted at oral argument, yet as a jurisdictional matter it must, in my judgment, be resolved here in favor of the appellants. In sum, it is not apparent to me that the appellants cannot to a legal certainty recover the amount claimed. *See St. Paul Mercury Indemnity Co., supra; Gomez v. Wilson, supra*.

### III

█ Not every violation of local law may be transformed into a constitutional tort at the whim of a plaintiff simply because it was committed by a governmental agent under color of official authority. *See Paul v. Davis*, 424 U.S. 693, 699–701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *cf. Cooper v. California*, 386 U.S. 58, 61, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). I am not insensitive in this regard to the growing burden of unsound constitutional claims upon our district courts. The proper means of disposing of baseless claims, however, should usually be by summary judgment for failure to state a claim upon which relief can be granted and not by dismissal for lack of jurisdiction. *See Lewis v. D. C. Department of Corrections*, 174 U.S.App.D.C. 483, 533 F.2d 710, 712 (1976). Where a federal constitutional claim brought under section 1331(a) rests upon an allegation of governmental involvement that is clearly baseless, however, the suit may and should be dismissed for want of jurisdiction. While the action presently before this court may pose a close question in this respect, I believe that the more cautious alternative adopted today is the preferable one.

For the foregoing reasons, and without expressing any views as to the merits of this case, I concur in the decision of the court reversing the district court's dismissal of this action for lack of jurisdiction.

MacKINNON, Circuit Judge, concurring specially:

I concur in the result expressed by the opinion of Judge Tamm, generally for the reasons he expresses. There is a serious question whether the monetary value of the rights allegedly violated here meet the $10,000 jurisdictional amount but I leave this to the further determination of the trial court. The jurisdictional statute has also been amended recently to remove the $10,000 requirement in certain specified instances:

> The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that *no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.*

28 U.S.C. § 1331(a), *as amended by* Pub.L. 94–574, Oct. 21, 1976 (90 Stat. 2721). On remand the trial court should consider the

additional issues raised by this amendment of the statute in the light of our opinion in *Marshall v. District of Columbia*, 182 U.S. App.D.C. ——, at ——, 559 F.2d 726, at 730 (Nos. 75–1651, etc).

To my mind, the most serious shortcoming of appellant's complaint seems to be the doubt it presents as to to whether the claim against the government is insubstantial and raised solely for the purpose of conferring jurisdiction. I have grave doubts that appellant's allegations against the officer are sufficient to convert an ordinary tort into constitutional violations cognizable under 42 U.S.C. § 1983.

While the existence of necessary governmental involvement could be resolved at the summary judgment stage, as Judge Tamm's concurrence proposes, it is appropriate, in certain cases, to find such a lack of governmental connection as to deny 28 U.S.C. § 1343 jurisdiction on a pre-summary judgment motion. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), upheld a dismissal before summary judgment where insufficient governmental action was alleged. In that case, the complained-of defamation was particularly harmful precisely because it was uttered by a police chief; such additional connection between the government and the tort is lacking here. Though I concur in the remand resulting in this case, I would not agree with any inference that jurisdictional challenges based on insufficient governmental action cannot succeed against 28 U.S.C. § 1343 cases.