Remola BOYKIN, et al., Appellants,

v.

The DISTRICT OF COLUMBIA.

No. 81–1444.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 12, 1982.
Decided Sept. 10, 1982.

R. Kenneth Mundy, with whom Samuel J. Lowe, Washington, D.C., was on the brief, for appellants.

David P. Sutton, Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before TAMM, Circuit Judge, ROBB, Senior Circuit Judge, and HOWARD T. MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

In late July of 1979, Jefferson Boykin, Jr., was shot and killed by an officer of the District of Columbia's Metropolitan Police Department (MPD) following a chase that commenced when Boykin was questioned regarding his alleged involvement in an armed robbery. In the case at bar, appellants Remola and Jeff Boykin, the parents of Jefferson Boykin, have brought a multi-

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

faceted action alleging that the shooting of their son was tortious and in violation of his civil and constitutional rights. The only defendant named by the appellants in the district court, and the appellee here, is the District of Columbia. The district judge, after reviewing the pleadings and other pretrial memoranda submitted by the parties, concluded that appellants raised no cognizable federal claims in their action but rather sought recovery solely on the basis of common law torts; accordingly, the judge dismissed *sua sponte* the litigation without prejudice on jurisdictional grounds. We agree that appellants' suit was properly dismissed by the district judge, although we express no view on the validity of his jurisdictional analysis. Rather, recent decisions of this and other appellate courts have made it clear that municipalities such as appellee are not subject to *respondeat superior* liability in so-called *Bivens* actions. Thus, since appellants' only federal claims on appeal involve precisely such vicarious liability, it is clear that their complaint failed to state any federal claim for which relief could be granted and was properly dismissed in the district court.

## I. The Proceedings Below

### A. The Complaint

On June 17, 1980, appellants filed this action for 4.5 million dollars in compensatory and punitive damages against the District of Columbia, alleging that a police officer employed by the District had wrongfully shot and killed their son the preceding year. The two police officers involved in Jefferson Boykin's apprehension and shooting were not made parties to the suit. Appellants' complaint presented six claims for relief, five of which were pendent "state" common law claims.[1] The only federal claims asserted by appellants were found in their first count, which alleged that appellee had deprived their son of rights secured by 42 U.S.C. §§ 1983, 1985, and 1986 (1976 and Supp. IV 1980), and by the Fourth and Fifth Amendments to the United States Constitution.[2] Jurisdiction was asserted under 28 U.S.C. § 1331 (1976) (federal question jurisdiction) and under 28 U.S.C. § 1343 (1976) (civil rights actions jurisdiction).

### B. The Incident at Issue

The parties' respective characterizations of the events that transpired during the late hours of July 24 and the early morning hours of July 25, 1979, could hardly be more divergent. Appellants contend that on the evening of July 24, two MPD officers were patrolling the area near the intersection of Vermont Avenue and Fourteenth Street, N. W., looking for suspects in connection with a street robbery that had been reported in that area earlier in the evening. At some point during the evening, appellants allege, the two officers approached Jefferson Boykin and several unidentified youths who were standing near the corner of Fourteenth Street and Rhode Island Avenue, N. W. When questioned about the robbery,

1. The five pendent common law claims asserted by appellants were (1) fraud by the District of Columbia in misrepresenting the circumstances surrounding decedent's death, (2) assault and battery, (3) wrongful death, (4) intentional infliction of emotional distress, and (5) a survivor's action on behalf of decedent's estate. Complaint at 3–5, *Boykin v. District of Columbia*, No. 80–1493 (D.D.C. Apr. 10, 1981); Appellants' Appendices (A.A.) at 3–5.

2. The federal claims proffered by appellants included allegations that the "illegal acts of [appellee's] agents" denied the decedent his "rights to life, liberty and freedom from government assault, arrest, prosecutio [sic] and persecution." Complaint at 3, *Boykin v. District of Columbia*, No. 80–1493 (D.D.C. Apr. 10, 1981); A.A. at 3. The right to recover damages against municipal employees under § 1983 has, of course, been recognized since the seminal case of *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In 1979, Congress amended § 1983 to cover acts committed under the color of District of Columbia law. *See infra* note 3. As for the claims based directly on the federal Constitution, the Supreme Court recognized an implied cause of action for damages for the violation of Fourth Amendment rights in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). There has yet been no comparable holding by the Court with regard to rights protected by the Fifth Amendment.

the youths ran in different directions; Boykin ran into a parking lot located at 1313 Fourteenth Street, N. W. The MPD officers pursued Boykin, appellants submit, and found him hiding under a parked vehicle in the lot. Thereafter, appellants contend, Boykin ran again and was subsequently caught from behind by one of the officers.

Appellants allege that the second MPD officer deliberately fired his weapon at Boykin from only a few feet away *after* the first officer apprehended him. Indeed, appellants contend that Boykin was in fact falling forward toward the shooting officer at the time of the shot as a result of the first officer's handling. Appellants deny that Boykin possessed any weapon at the time he was shot and contend that the officer who fired the shot had approached the scene with his pistol drawn.

In response, appellee in its pretrial statement proffered the following statement of facts. While driving along Fourteenth Street, N. W., on the evening in question, two MPD officers were flagged down by two individuals who reported that they had just been robbed at gunpoint. As the officers and victims cruised the area, appellee contends, the perpetrators of the crime were spotted, and the two officers left their vehicle and chased the suspects on foot. A short time later, after failing to apprehend any of the suspects, the officers reentered their car and renewed their search, spotting Boykin—one of the individuals originally identified—hiding in the parking lot at 1313 Fourteenth Street, N. W.

After a brief chase on foot, appellee contends, one of the officers caught Boykin and began to spin him around; as this action occurred, the second officer allegedly observed that Boykin had pulled a pistol from his waist and was poised to shoot the officer who had placed him in custody. Upon seeing the gun, the second officer allegedly shouted to draw his partner's attention to the threat and then drew his

revolver and shot Boykin once in the chest. The combined force of the spinning movement and the impact of the bullet, appellee submits, propelled the weapon Boykin was allegedly carrying some forty feet from the locus of the shooting.

The most significant divergence between the parties' versions of the facts is, of course, appellee's contention that the decedent was carrying and had drawn a weapon at the time he was shot. As we must on review of a trial court ruling dismissing a complaint, however, we shall accept the allegations made by appellants as true. *See Harper v. McDonald,* 679 F.2d 955, 960 (D.C. Cir.1982) (per curiam).

## C. The District Court's Ruling

As noted above, five of the six counts of appellants' complaint in the district court were common law claims against a non-diverse party over which a federal court would have subject matter jurisdiction only through the exercise of pendent jurisdiction. Accordingly, the critical question for the district judge, and for us on review, is whether the first count of appellants' complaint presents a substantial ground for federal jurisdiction.

This crucial first claim of the Boykins proffers two broad grounds of liability under federal law—statutory liability under 42 U.S.C. §§ 1983, 1985, and 1986, and liability based directly on violations of the Fourth and Fifth Amendments to the federal Constitution. As for the statutory claims, the district judge rejected appellants' prayer for relief based on the three cited civil rights statutes. The trial court rejected appellants' section 1983 claim because that section did not apply to deprivations of federal rights committed under color of District of Columbia law at the time that the police conduct complained of allegedly occurred. *Boykin v. District of Columbia,* No. 80–1493, Order at 1 (D.D.C. Apr. 10, 1981).[3] As for the claims based on

---

3. Although, as the district judge noted, Congress amended § 1983 in 1979 to provide for suits against District of Columbia officials based on unlawful behavior committed under color of District law, that amendment had only prospective effect and thus applied only to incidents occurring after December 29, 1979. Pub. L.No.96–170, § 3, 93 Stat. 1284, 1284 (codified

sections 1985 and 1986, the trial judge ruled that those provisions had no applicability to employees and appendages of the District of Columbia.[4] *See District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). Accordingly, the district judge dismissed the statutory claims pressed against appellee in appellants' first count.

■ Appellants' constitutional claims presented more difficult issues for resolution. It is now well established that a private cause of action exists against federal officials for the violation of Fourth Amendment rights. *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Appellants contended in the district court that a comparable private cause of action exists where a violation of the Fifth Amendment's due process clause is alleged. Relying on *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the decision of our court in *Payne v. Government of the District of Columbia,* 559 F.2d 809 (D.C.Cir.1977), and certain district court opinions,[5] appellants submitted that a *Bivens* -type action is cognizable where the alleged infringement of constitutional rights involves rights guaranteed by the Fifth Amendment.

The district court, however, did not reach the question whether the principle embraced by the *Bivens* Court extended to the rights protected by the Fifth Amendment. Rather, relying on *Bell v. Hood,* the court held that it lacked jurisdiction to hear appellants' constitutional claims because those claims were "immaterial to the issues actually presented by this lawsuit and were apparently filed solely to secure entry to federal court."[6] The district judge's scruti-

ny of the complaint and pretrial filings of appellants convinced him that they in fact sought recovery solely on the basis of common law torts. Because both the statutory and constitutional bases for appellee's liability were thus inadequate, the district judge concluded that appellants failed to present a substantial federal question of the type that would ground jurisdiction under 28 U.S.C. § 1331.

Having rejected the federal claims against the District of Columbia, the court dismissed as well all of the pendent common law claims under the doctrine of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The dismissal was, however, "without prejudice to refiling in the appropriate forum."[7] We would note that since the date of the dismissal appellants have refiled their action in the District of Columbia Superior Court.

### D. The Positions on Appeal

As is the case with their respective characterizations of the facts, the parties' positions before this court could hardly be more divergent. Indeed, so different are their approaches that it scarcely seems as though they are involved in the same litigation.

Appellants proffer two major arguments on appeal. First, they contend that there is under federal common law—or at least should be—an implied private cause of action for damages against those federal officials who deprive an individual of the rights guaranteed by the Fifth Amendment's due process clause. The constitutional right appellants assert is, of course, the right to be free from the deprivation of one's life without due process of law. Invoking *Bell v. Hood* once again, appellants argue that

---

at 42 U.S.C. § 1983 (Supp. IV 1980)). *Boykin v. District of Columbia,* No. 80–1493, Order at 1 (D.D.C. Apr. 10, 1981).

**4.** *Boykin v. District of Columbia,* No. 80–1493, Order at 1 (D.D.C. Apr. 10, 1981).

**5.** In addition to the *Bell* and *Payne* decisions, appellants rely on *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C.1979), and *Saffron v. Wilson,* 70 F.R.D. 51 (D.D.C.1975). In the *Thornwell* case the district judge ruled that a

private cause of action under the Fifth Amendment should be implied in this circuit. 471 F.Supp. at 354. In *Saffron* the judge suggested that *Bivens* has been read to extend to the protection of all constitutionally recognized interests. 70 F.R.D. at 53 n.1.

**6.** *Boykin v. District of Columbia,* No. 80–1493, Order at 2 (D.D.C. Apr. 10, 1981).

**7.** *Id.*

once a constitutional injury is demonstrated, the aggrieved individual is entitled to an award of damages as "a particular remedial mechanism normally available in the federal courts." *Bivens v. Six Unknown Named Agents,* 403 U.S. at 397, 91 S.Ct. at 2005; *see also Marbury v. Madison,* 5 U.S. 87, 102–03, 1 Cranch 137, 163, 2 L.Ed. 60 (1803). Appellants submit that appellee's employees deprived Jefferson Boykin of rights secured by the Fourth and Fifth Amendments, thus activating both this implied right of action and the comparable one recognized by the *Bivens* Court.

Appellants' second major argument challenges the district court's finding that the complaint presented no substantial ground for federal jurisdiction. Both the parties and the district judge agreed that the doctrines of *Bell v. Hood* governed the determination of whether an allegation of a so-called constitutional tort presented a federal question substantial enough to survive a motion to dismiss on jurisdictional grounds. As appellants note, the *Bell* Court cited approvingly the traditional rule for determining the existence of federal question jurisdiction: where the complaint is clearly drawn to claim a right to recover directly under the Constitution, jurisdiction exists, and a federal court must in most cases entertain the suit. 327 U.S. at 681–82, 66 S.Ct. at 775–76. As the district court noted, however, the Court specified two situations in which an action alleging a constitutional deprivation or federal statutory claim may be dismissed for want of jurisdiction: "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682–83, 66 S.Ct. at 776.

In the case at bar, the district judge invoked the first of these exceptions in dismissing appellants' complaint, concluding that the gravamen of their action is a claim based on common law tort concepts and

that the outcome of the litigation would turn exclusively on common law principles. Appellants, relying on our decision in *Payne,* argue in response that "*Bell* makes clear that the availability of a mechanism for local remediation does not ipso facto foreclose the possibility of a concurrent federal cause of action . . . ." *Payne,* 559 F.2d at 817 (opinion of Robinson, J.). Arguing that they should be the "master" of the law upon which they rely, appellants submit that their constitutional claims were neither so insubstantial nor devoid of merit as not to be of constitutional magnitude and thus argue that the district court's dismissal was erroneous.

In response, appellee District of Columbia bases its argument for affirmance not on the jurisdictional ground employed by the district court in disposing of the case but rather on the ground that appellants have failed to allege any federal claim for which relief could be granted. In proffering this argument appellee does not vigorously assert that appellants have presented a frivolous or insubstantial claim in the *Bell v. Hood* sense; the District contends, rather, that it cannot as a matter of law be subjected to *respondeat superior* liability on the basis of constitutional torts committed by its employees. Relying heavily on *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978),[8] the District submits that, although it may be held legally responsible for constitutional torts resulting from an official policy, it cannot be held liable for constitutional torts committed by its employees where the *sole* theory of liability is *vicarious* liability. Although *Monell* was, of course, a section 1983 case involving a municipal subdivision of a state, appellee argues that precisely the same considerations that motivated the *Monell* Court are applicable in a *Bivens*-type action where the defendant is a municipality. Indeed, appellee argues that it would be anomalous to subject the sole "federal municipality" to a higher and distinct form of liability than that to which every other municipal entity in the country is subjected.

---

**8.** In *Monell* the Supreme Court held, of course, that Congress did not intend local governments to be subject to vicarious liability under 42

U.S.C. § 1983 for the acts of their employees. 436 U.S. at 691, 694, 98 S.Ct. at 2036, 2037.

Accordingly, appellee argues that we should affirm the district court's dismissal of appellants' complaint for the most basic reason of all: regardless of the facts that appellants might adduce at trial, there is no possibility that they might recover on their federal claims, for the overwhelming weight of authority suggests that municipalities may not be subjected to vicarious liability for the constitutional torts of their employees. Appellee thus argues that, because appellants' federal claims involve no allegations that the District engaged in or countenanced any unconstitutional municipal policies, those claims must be dismissed. The parties are in apparent agreement that the dismissal of the entire complaint will stand or fall according to our disposition of the federal claims made by appellants, in accordance with the doctrines of pendent jurisdiction articulated in *United Mine Workers v. Gibbs.*

## II. *Respondeat Superior* LIABILITY UNDER A *Bivens* CLAIM

Were it necessary to reach the issues presented by appellants before this court, we would once again be pressed to determine whether a *Bivens*-type action lies in this circuit for violations of the Fifth Amendment; this question would appear to remain an open one, although comments of individual judges in the *Payne* case suggest the possibility of extending *Bivens* to cover rights guaranteed by the Fifth Amendment.[9] Moreover, with regard to *Bivens* actions based on any constitutional right, we have yet to resolve whether there exists any threshold beyond which a claim involving a constitutional tort must pass in order for that claim to survive a motion to dismiss. On one hand, "[n]ot every violation of local law may be transformed into a constitutional tort at the whim of a plaintiff simply because it was committed by a governmental agent under color of official authority." *Payne,* 559 F.2d at 829 (Tamm,

J., concurring). On the other hand, as appellants argue, the fact that a common law tort action might exist on the same set of facts does not in itself foreclose the possibility of a concurrent federal cause of action.

In light, however, of the dispositive argument pressed by appellee in this action, we may leave for yet another day the thorny questions posed by appellants. A recent decision of this court, handed down after both the briefing and oral argument in the case at bar, has made clear that it is impossible as a matter of law for appellants to recover under any of the federal claims they have asserted.

In *Tarpley v. Greene,* 684 F.2d 1 (D.C.Cir. 1982), a unanimous panel of this court ruled that municipalities may not be subjected to *Bivens*-type liability where the sole theory of liability is *respondeat superior. Id.* at 11. The plaintiff in *Tarpley* had included among his claims the allegation that law enforcement personnel in the employ of the District of Columbia and two counties in Virginia and Maryland had, in the course of an investigation, unlawfully detained and assaulted him and had destroyed his property. *Id.* at 3. Proceeding both under section 1983 and directly under the Constitution for alleged violation of his Fourth and Fourteenth Amendment rights, Tarpley brought suit against the police officers involved in the incidents, the respective chiefs of police, and the three local governments in question. Vital for present purposes is the fact that only the police officers allegedly involved in the deprivation of Tarpley's rights were sued *directly* for the constitutional torts they were charged with committing; Tarpley sought to hold the chiefs of police and the local government entities liable solely on a theory of vicarious liability, not for any unconstitutional official policy or custom ordained at their behest. *Id.* at 4.

---

**9.** As one judge noted in *Payne,* "[w]hile a few courts have refused to extend *Bivens* beyond the Fourth Amendment ... this court has indicated a willingness to consider a broader application." 559 F.2d at 819 n.49 (opinion of Robinson, J.) (citations omitted). Another judge

went even further and stated that "*Bell v. Hood* ... clearly held that a federal court can grant money damages to redress the violation by a federal officer of a person's fifth amendment rights." *Id.* at 824 (Tamm, J., concurring).

The district court in *Tarpley,* relying on the Supreme Court's *Monell* decision, granted the motions to dismiss filed by the two state counties and their respective chiefs of police. Because *Monell* proscribed the use of *respondeat superior* liability against municipalities under section 1983, the district court reasoned, a logical and necessary extension of the *Monell* doctrine barred such liability for *Bivens*-type claims. *See id.* at 3–4. With regard to the District of Columbia and its police chief, the district judge in *Tarpley* granted summary judgment against the plaintiff on all claims. Tarpley's section 1983 claims were rejected because that section did not apply to the District at the time of the alleged incidents; his constitutional claims were rejected primarily because of the absence of liability-creating acts by the police officers in question. The district judge also suggested that the *Monell* doctrine might independently bar recovery on Tarpley's constitutional claims because no official policy or custom implicating the District had been alleged. *See id.* at 5.

This court affirmed each of the *Tarpley* district court's rulings that are relevant for the purposes of the instant appeal. In particular, we held that the *Monell* doctrine extended that case's proscription of vicarious liability to claims brought under a *Bivens* theory. Writing for the court, Judge Edwards canvassed the appellate cases dealing with the issue and noted the unanimous conclusion drawn in the post-*Monell* decisions that municipalities are not subject to vicarious liability in *Bivens* actions. *Id.* at 9.[10] As Judge Edwards went on to note, vicarious liability was not at issue in *Bivens,* and nothing in *Bivens* or its progeny suggests that such liability must be available in actions based directly on the Constitution. *Id.* at 10. Moreover, the court in *Tarpley* noted that *Bivens*-type and section 1983 actions tend to be coextensive in the scope of rights protected—at least in those areas in which *Bivens* claims are recognized; thus, Judge Edwards concluded, it would be the height of anomaly to rule that

> local governments are not subject to *respondeat superior* liability on claims of constitutional violation brought under section 1983 and, at the same time, hold that municipalities may be held liable on a theory of *respondeat superior* on precisely the same constitutional claims brought directly under the Constitution.

*Id.* at 11 (footnote omitted).

Quite aside from the obvious fact that *stare decisis* requires us to follow this recent decision, we find ourselves in complete agreement with Judge Edwards' analysis in *Tarpley.* It would be anomalous indeed if a plaintiff could secure broader relief under a *Bivens* theory than in a section 1983 claim based on precisely the same facts and the same legal theory. As did the

---

10. In light of the thorough canvassing of the relevant decisions conducted by Judge Edwards in *Tarpley,* we quote at some length from his opinion:

> [E]very Circuit that has considered this question following the decision in *Monell* has concluded that municipalities are not subject to *respondeat superior* liability in *Bivens* actions. *Ellis v. Blum,* 643 F.2d 68, 85 (2d Cir. 1981); *Dean v. Gladney,* 621 F.2d 1331, 1334–37 (5th Cir. 1980), *cert. denied,* 450 U.S. 983 [101 S.Ct. 1521, 67 L.Ed.2d 819] (1981); *Jones v. City of Memphis,* 586 F.2d 622, 624–25 (6th Cir. 1978), *cert. denied,* 440 U.S. 914 [99 S.Ct. 1230, 59 L.Ed.2d 464] (1979); *Molina v. Richardson,* 578 F.2d 846, 847–54 (9th Cir.), *cert. denied,* 439 U.S. 1048 [99 S.Ct. 724, 58 L.Ed.2d 706] (1978); *see Cale v. City of Covington,* 586 F.2d 311, 317–18 (4th Cir. 1978) (no *Bivens* action available against municipalities after *Monell*); *cf. DeShields v.*

> *United States Parole Commission,* 593 F.2d 354, 356 (8th Cir. 1979) (no *respondeat superior* liability in *Bivens* claim against U.S. Parole Commission). Similarly, courts that considered the question prior to *Monell* also ruled that municipalities cannot be held liable on a *respondeat superior* theory in *Bivens* actions. *E.g., Turpin v. Mailet,* 579 F.2d 152, 166–67 (2d Cir.) (en banc), *vacated on other grounds,* 439 U.S. 974 [99 S.Ct. 554, 58 L.Ed.2d 645] (1978) (for reconsideration in light of *Monell*); *Jamison v. McCurrie,* 565 F.2d 483, 485 (7th Cir. 1977); *Kostka v. Hogg,* 560 F.2d 37, 41–44 (1st Cir. 1977); *cf. Nix v. Sweeney,* 573 F.2d 998, 1003 (8th Cir. 1978) (sovereign immunity protects municipalities from *respondeat superior* liability in *Bivens* claims).

> *Tarpley v. Greene,* 684 F.2d 1, at 9–10 (D.C.Cir. 1982) (footnote omitted).

*Tarpley* court, we feel that "a fair reading of the Court's [*Monell*] decision forecloses [the] contention that municipalities may be made subject to *respondeat superior* liability in a *Bivens* action . . . ." *Id.* at 11. This court's decision in *Dellums v. Powell*, 566 F.2d 216 (D.C.Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), does not, moreover, compel a different result, notwithstanding its conclusion that the District of Columbia could be subjected to vicarious liability in a *Bivens* case. Close scrutiny of the rationale of *Dellums* indicates that this aspect of its holding was based on assumptions of law that are no longer apposite after *Monell*. Like the *Tarpley* court, we accordingly do not view *Dellums* as controlling in light of its pre-*Monell* genesis. *See Tarpley*, at 10 n.23.

■■■ The foregoing analysis makes manifest that appellants failed in their complaint to allege any federal claims for which relief could be supplied. The district judge quite properly dismissed their claims based on the civil rights statutes on the ground that section 1983 did not apply to officers of the District of Columbia until after the shooting that led to the suit had occurred and that sections 1985 and 1986 of Title 42 have never been applicable to District employees. *See supra* notes 3–4. The claims pressed by appellants based on *Bivens* and on an implied cause of action under the Fifth Amendment fail for want of any party who can be held liable directly under such theories; the failure of appellants to sue either of the officers allegedly responsible for the deprivation of their son's rights is fatal to their constitutional claims, for as we have noted above, it is now clear that the District of Columbia—the only defendant in the district court—may not be subjected to *respondeat superior* liability in a *Bivens*-type action. Because appellants' federal claims against the District involved only allegations of vicarious liability, it is clear that those claims must fail.

■■■ We would note, finally, that appellee is not barred from proffering the argument that the case against it should be dismissed because it cannot be held vicariously liable, even though the district judge dismissed the case for want of subject matter jurisdiction. As the District notes, it specifically advanced the *respondeat superior* point in its trial brief and is not on appeal precluded from advancing the argument in urging affirmance because the district court failed to adopt it. Relying on the oft-cited dictum of the Supreme Court in *Dandridge v. Williams,* 397 U.S. 471, 475 n.6, 90 S.Ct. 1153, 1156 n.6, 25 L.Ed.2d 491 (1970),[11] appellee correctly contends that it may rely on any ground in support of a lower court's judgment, regardless of whether that ground formed the basis of the lower court's decision. *See Arlinghaus v. Ritenour,* 622 F.2d 629, 638 (2d Cir. 1980); *United States v. General Motors Corp.,* 518 F.2d 420, 441 (D.C.Cir.1975); 9 Moore's Federal Practice ¶ 204.11[3] at 4–45 to 4–46 (2d ed. 1980). Because the unavailability of *respondeat superior* liability is now established beyond peradventure, we find no inequity in disposing of the case at bar on a ground other than that employed in its disposition by the district judge. *See Dandridge v. Williams,* 397 U.S. at 475 n.6, 90 S.Ct. at 1156 n.6.

### III. CONCLUSION

The recent *Tarpley* decision of this court makes clear that the District of Columbia may not be held liable under a theory of *respondeat superior* for the constitutional torts of its employees prosecuted under a *Bivens*-type action. It is also clear that the claims pressed by appellants that are based on the civil rights statutes provide no cause of action to the Boykins. Accordingly, it is

---

11. The Supreme Court observed in *Dandridge* that "[t]he prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." 397 U.S. at 475 n.6, 90 S.Ct. at 1156 n.6. Although there would appear to be certain equitable limitations on the use of this doctrine—it presumably might not be appropriately employed where its use would deprive a party of all opportunity to respond to a particular argument—such limits are not implicated by the facts of the instant case.

indisputable that all of the federal claims asserted by appellants were insufficient to survive a motion to dismiss for failure to state a claim for which relief may be granted. That the district judge in fact dismissed the *Bivens* -type claims for want of jurisdiction is academic; the pleadings and pretrial materials submitted by the parties demonstrate conclusively that appellants cannot possibly recover on any of their federal causes of action. As the federal claims must be dismissed, it is in turn clear that the district judge was correct in dismissing the pendent common law claims as well.

Thus, we conclude that appellants' complaint was properly dismissed by the district judge. As noted at the outset, the dismissal was, again quite properly, without prejudice to further proceedings based on the same facts and allegations. At oral argument we learned that related litigation has been filed in the District of Columbia Superior Court and is there pending resolution. By all accounts Superior Court appears the appropriate forum for this litigation, and we hope that appellants' complaint will be disposed of in a speedy and equitable fashion there.

*Affirmed.*