Ronald MORGAN, et al., Plaintiffs,

v.

The DISTRICT OF COLUMBIA, et al., Defendants.

Civ. A. No. 80–0517.

United States District Court, District of Columbia.

Oct. 27, 1982.

Harry T. Alexander, Washington, D.C., for plaintiffs.

Johnny M. Howard, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

SIRICA, Senior District Judge.

This matter is before the Court on defendants' motion for dismissal and summary judgment. On May 27, 1982 the Court entered an order requiring the plaintiffs to submit more responsive affidavits setting forth the scope of the injuries alleged to have been suffered. The plaintiffs in the present case have levelled a number of different causes of action against the remaining six defendants. These claims arise from two separate incidents occurring in late 1979 and early 1980 when two of the plaintiffs were placed under arrest by the Metropolitan Police Department (MPD) of the District of Columbia. The first incident involved the arrest of Ronald Morgan on September 11, 1979 for parole and probation violations. The second incident occurred on January 5, 1980 when Linda Bannister Morgan, wife of Ronald Morgan, was arrested while exiting a courtroom in the Superior Court where her husband was on trial for his violations. Plaintiffs Ronald and Linda Morgan, both personally and as representatives of their two children, have filed suit against the three arresting officers, the District of Columbia, the Mayor of the District of Columbia, and the Chief of Police of the District. Although the amended complaint is not a model of clarity this Court construes the plaintiffs' claims to allege at least six separate federal claims along with four common law torts. For simplicity's sake, the Court will, on the defendants' motion to dismiss, address each cause of action separately and consider how each cause of action affects particular defendants.

■ To begin with, several of plaintiffs' legal claims can be dismissed as patently frivolous. For example, plaintiffs, in their "jurisdictional statement," allege a cause of action under the federal Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* How federal administrative procedures relate to plaintiffs' allegations is beyond imagination, even if the former federal defendants had remained in the case. Similarly, a cause of action is alleged under 42 U.S.C. § 1981. How plaintiffs' allegedly false arrest can be considered either a racially discriminatory action on a contract or a discriminatory effort to deny plaintiffs their rights "to sue, be parties, give evidence, . . . and [enjoy] equal benefit of all laws and proceedings" cannot be discovered on the record before the Court. Plaintiffs have made no allegation of an attempt by the defendants to impair their legal rights to equal and full access to means of legal recourse. Therefore, this Court must dismiss those parts of plaintiffs' complaint that depend on either 5 U.S.C. §§ 701 *et seq.* or 42 U.S.C. § 1981. The four remaining federal causes of action require more serious treatment.

As the Court interprets the plaintiffs' amended complaint, these four claims are: 1) a deprivation of plaintiffs' civil rights under 42 U.S.C. § 1983; 2) a conspiracy by the defendants to so deprive plaintiffs under § 1985(3); a direct constitutional violation of plaintiffs' rights to the equal protection of the laws; and 4) a direct constitutional violation of plaintiffs' rights to due

process of law. Each federal cause of action will be considered in turn.

This Court, mindful of the instructions of the Supreme Court in *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) and *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 396, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971), has purposely placed plaintiffs' alleged constitutional injuries in their most favorable light. Nevertheless, the present plaintiffs are not *pro se* litigants. Their retained counsel are within the Supreme Court's statement that the "party who brings a suit is master to decide what law he will rely on . . . ." *Bell v. Hood,* 327 U.S. 678, 681, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1946) (quoting *The Fair v. Kohler Die Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) ). Therefore, this Court will not include direct fourth and sixth amendment claims in this case when the plaintiffs themselves have failed to do so. Attention to the pleadings in this case demonstrates the great lengths this Court has already traveled in order to pass upon plaintiffs' alleged constitutional injuries.

While the Court is uncertain whether a direct private cause of action for damages can be implied for denials of equal protection, the Supreme Court, in *Davis v. Passman,* 442 U.S. 228, 234, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979), clearly stated that the Due Process Clause of the fifth amendment can be so enforced. More importantly, the *Passman* Court stated that "[t]he equal protection component of the Due Process Clause thus confers on petitioner a federal right to be free from gender discrimination . . . ." *Id.* 442 U.S. at 235, 99 S.Ct. at 2271. Whether the Court intended to indicate favor for the notion of a private right of action for the equal protection clause, arguably an even broader and less well defined clause than the due process clause of the fifth amendment, is not precisely clear from the case. This Court has determined, however, that at least as to some defendants, this thorny issue need not be reached.

The Court of Appeals for the District of Columbia Circuit has recently handed down its opinion in the case of *Boykin v. District of Columbia,* 689 F.2d 1092 (D.C. Cir.1982). In *Boykin,* the circuit court made it clear that the holding of the Supreme Court in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) was equally applicable to *Bivens*-type actions. That is to say, the doctrine of *respondeat superior* is not available to plaintiffs in suits brought under either 42 U.S.C. § 1983 or under *Bivens.* Significant in this respect is the fact that the *Boykin* court relied in great part on the well reasoned opinion of a panel of this circuit in *Tarpley v. Greene,* 684 F.2d 1 (D.C.Cir.1982) which had come to a similar conclusion. In this regard the Court observes that the plaintiffs have not made any allegation that the conduct of the police officers in question here was undertaken pursuant to an official or unofficial custom or policy of the Metropolitan Police Department. *See Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I.1978) ("deliberate indifference" minimum threshold for municipal attributed liability).[1] As a result, this Court must dismiss plaintiffs' § 1983 and direct constitutional claims for damages as they apply to defendants whose liability rests on a theory of *respondeat superior.* Therefore, the *Bivens*-type and § 1983 claims against the District of Columbia, Chief of Police Turner, and Mayor Barry must be dismissed for failure to state a claim for which relief may be granted.

The three remaining individual defendants under the *Bivens* and § 1983 claims are the three police officers who actually conducted the arrests which inspired this case. One of the police officers, Officer Hodges, has not been alleged to have been a participant in the incident of January 5, 1980 in the plaintiffs' complaint.

---

1. Nor have the plaintiffs claimed a failure on the part of these defendants to adequately supervise the individual officers in this case. *Cf.* *Thomas v. Johnson,* 295 F.Supp. 1025, 1030–33 (D.D.C.1968).

Amended Complaint, ¶ 17. Accordingly, the only basis for defendant Hodges' liability under § 1983 in the present case stems from his alleged participation in the prior incident on September 11, 1979. This Court further observes that, although plaintiffs allege a cause of action under 42 U.S.C. § 1985 requiring, among other things, proof of a conspiracy, the only allegation in the complaint proffering a conspiratorial role for Officer Hodges relates to his participation in the arrest of Ronald Morgan on September 11, 1979. This Court is unable to interpret the pleadings of the plaintiffs to allege that Officer Hodges was in any sense a co-conspirator with the other two officers who arrested Linda Morgan on January 5, 1980. Because of the Supreme Court's decision in *District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), however, § 1983 has been interpreted to not reach the District of Columbia or its officials for causes of actions arising prior to December 29, 1979. *See Boykin* at 1094 n. 6. Therefore, at least as to Officer Hodges, the complaint fails to state a cause of action under § 1983 for which relief could be granted.

■ In short, as to plaintiffs' *Bivens* and § 1983 claims, the § 1983 claims can only lie against defendant Officers Exum and Skipper for their conduct on January 5, 1980. Plaintiffs' *Bivens* claims, on the other hand, can be asserted against all three police officers, *District of Columbia v. Carter,* 409 U.S. 418, 433, 93 S.Ct. 602, 610, 34 L.Ed.2d 613 (1973), for their individual involvement to the extent that a *Bivens* claim can be propounded on these facts. Of course, the officers can only be held liable in their individual capacity on the *Bivens*-type claims.

The plaintiffs' claim for damages under 42 U.S.C. § 1985(3), however, requires a different analysis. In the wake of the Supreme Court's decision in *Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), the availability of a cause of action against District of Columbia officials under 42 U.S.C. 1985(3) has remained unsettled. In *Carter,* the Supreme Court held that § 1983

actions could not be asserted against District of Columbia officials because the statute only reached officials of "every State or Territory." In arriving at this conclusion, the Supreme Court compared § 1983 actions with those pursued under 42 U.S.C. § 1982. In an extensive examination of the legislative history of these two statutes the Court found that despite similar origins, reflection on the different purposes and different scope of the two statutes required the conclusion that the same term of "State or Territory" had different meanings for each statute. In § 1983, the Court held, the term "State or Territory" did not include the District of Columbia. On the other hand, the Court stated that, in keeping with its previous holding in *Hurd v. Hodge,* 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187 (1948), the term "State and Territory" as used in § 1982 was inclusive of the District of Columbia. *Carter,* 409 U.S. at 420, 93 S.Ct. at 604. In passing on this Court's ability to grant the relief requested by plaintiffs on their 1985(3) claim, the Court must similarly assess the intended scope of the term "State or Territory" in 42 U.S.C. § 1985(3).

■ Before addressing whether the District of Columbia or its officers come within the reach of § 1985, several preliminary matters should be made clear. The only issue for resolution as to the individual officers is whether they, as district employees, come within the statute while acting in their official capacities. As to the District of Columbia, the Chief of Police, and the Mayor of Washington, there is a more obvious prior issue which makes consideration of their inclusion within the terms of the statute unnecessary. These latter three defendants are being sued under a *respondeat superior* theory of liability. Again, there has been no allegation of direct or indirect participation by these three defendants in the events surrounding the arrest of Linda or Ronald Morgan. To hold any of these three defendants liable, the Court would have to adopt a theory of vicarious liability as to the District and its principal officers. Absent some showing of direct involvement or at least some allegation of custom or

practice this Court cannot extend the principle of vicarious liability to these defendants based on a § 1985 cause of action. This Court would so hold even if the Supreme Court and the District of Columbia Court of Appeals had not repeatedly expressed their reluctance to apply attributed liability notions to actions under the civil rights statutes. For, at its most basic level, an action under § 1985 requires proof of a *conspiracy.* That is, there must be at least an accusation that the defendants manifested the specific intent, *United States v. Bailey,* 444 U.S. 394, 405, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1980), to agree to participate in a concerted effort to deprive someone of their civil rights based on a racially discriminatory motive. *See Griffin v. Breckenridge,* 403 U.S. 88, 102 n. 10, 91 S.Ct. 1790, 1798 n. 10, 29 L.Ed.2d 338 (1971). Without an allegation of an original agreement, however tacit, there can be no conspiracy. Therefore, the doctrine of attributed liability can have no application to a cause of action which requires some degree of knowledge, agreement, and involvement. As a result, the § 1985 claims as they relate to the District of Columbia, Mayor Marion Barry, and Chief of Police Maurice Turner must be dismissed for failure to state a claim upon which relief may be granted.

On the other hand, whether police officers of the District of Columbia can be held liable under § 1985(3) for acts carried out in their official capacity has never been squarely decided by the Court of Appeals in this Circuit. *Compare Hartigh v. Latin,* 485 F.2d 1068 (D.C.Cir.1973) (dicta) (holding that § 1985(3) case could proceed on basis of plaintiff's allegations of requisite amount in controversy) *with Boykin v. District of Columbia,* 689 F.2d 1092, 1094 (D.C.Cir. 1982) (dicta) (holding concurred in trial court's finding of no jurisdiction, and observed without comment that trial court had also ruled that § 1985 is inapplicable to District of Columbia). The Supreme Court, in *District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), indicated that some of the post-Civil War civil rights statutes may be asserted against District of Columbia officials while others may not. In construing the meaning of the statutory term "State or Territory" in *Carter,* the Supreme Court noted that three significant reasons weighed against including the District of Columbia within that term for § 1983 actions while including the District for purposes of § 1982 actions. These three factors—the source of constitutional authority relied on by the enacting Congress, the intended scope of the enacted statute, and the responsibility of the enacting Congress for the affairs of the District—must also be addressed by this Court in order to determine whether the District of Columbia is included within the term "State or Territory" as used in § 1985(3).

Central to the *Carter* Court's reasoning was the fact that § 1983 and § 1982 did not originate from the same constitutional source of congressional authority. That is, § 1983 was enacted in the Civil Rights Act of 1871 as a means of implementing the commands of the fourteenth amendment while § 1982 was enacted in the Civil Rights Act of 1866 to further the thirteenth amendment's ban on involuntary servitude. Because the fourteenth amendment is limited in application to state action, and because the District of Columbia had been construed to not be a "state" for fourteenth amendment purposes, the *Carter* Court held that § 1983 did not reach the District of Columbia. Given that § 1985(3) was enacted as a part of the Civil Rights Act of 1871 as a means of effectuating the fourteenth amendment, a similar conclusion with respect to it would appear to be compelling.

Also integral to the *Carter* Court's reasoning was the broader scope intended for § 1982 when compared with § 1983. Actions under § 1982, intended to promote the thirteenth amendment's ban on involuntary servitude, have been construed to reach even solely private defendants. *Carter,* 409 U.S. at 422, 93 S.Ct. at 605. With this broader reach in mind, the *Carter* Court considered that it would be anomalous to exempt the District of Columbia from the coverage of the term "State or Territory" in § 1982. Rather, stated the Court, "unlike § 1982, which uses the phrase 'every

State or Territory' as a mere geographical description, the expression 'any State or Territory' in § 1983 constitutes a substantive limitation on the types of conduct that are prohibited." *Carter,* 409 U.S. at 424, 93 S.Ct. at 606. In other words, where Congress had intended a civil rights statute to reach wholly private behavior, the Court considered it improbable that Congress intended to carve out the District of Columbia as an exception to a rule of universal application. Section 1985(3) is similar to § 1982 in that it reaches both private and state actors. *Griffin v. Breckenridge,* 403 U.S. 88, 101, 91 S.Ct. 1790, 1797, 29 L.Ed.2d 338 (1971). Based on the fact that both § 1982 and § 1985(3) apply to private conduct, one could conclude that the term "State or Territory" in § 1985(3) should be interpreted in the same fashion as the similar term in § 1982.

The *Carter* Court also considered a third factor in determining whether the District of Columbia is included within § 1983. The *Carter* Court surmised that the Congress that enacted § 1983 had little reason to include the District of Columbia within § 1983 because Congress itself was solely responsible for the supervision and control of the District's municipal government at that time. *Carter,* 409 U.S. at 429–30, 93 S.Ct. at 608–09. Placed in that context, the *Carter* Court reasoned that the Congress of 1871 could hardly have intended § 1983 to be a means for District of Columbia residents to seek relief from discriminatory congressional actions pertaining to the District. This reasoning, when applied to the present issue of § 1985(3)'s reach, should lead to a similar result. The Congress that enacted § 1985(3), the same Congress that enacted § 1983, was responsible for running the affairs of the District of Columbia government. Again, it is unlikely that the Congress of 1871 enacted § 1985(3) to allow itself or its employees to be sued for conspiring to deprive District residents of the equal protection of the law.

 In conclusion, the three factors that the *Carter* Court weighed in construing the term "State or Territory" in § 1983 lead to an identical conclusion for the same term in § 1985(3). Only one of the factors, the broad reach of § 1985(3) encompassing private discriminatory conspiracies, would argue in favor of holding the District of Columbia and its officials liable under § 1985(3). This Court is of the view that this single factor does not outweigh the fact that the Congress of 1871, relying on its fourteenth amendment authority in enacting § 1985(3), was completely responsible for the provision of municipal services in the District. As a result, the Court must hold that the term "State or Territory" in § 1985(3) does not include the District of Columbia or its officials acting in an official capacity. Therefore, the § 1985(3) claims against the three police officers in this case must be dismissed for failure to state a claim for which relief may be granted.

Although the Court has dismissed the plaintiffs' claims which invoke the *respondeat superior* doctrine or the use of § 1985 against District of Columbia employees, there remain several causes of action, sounding in both constitutional and common law, which may proceed. The Court would greatly benefit from additional memorandum of law on these remaining claims as they relate to difficult issues of law. For example, the Court is unaware of any dispositive rulings on the issue of whether a private cause of action for damages for equal protection violations can be implied from the constitution. Wherefore, it is this 27th day of October, 1982,

ORDERED that the parties remaining provide the Court with additional briefs and memorandums of law discussing the propriety of implying a cause of action under the progeny of *Bivens* for the due process and equal protection violations alleged in the amended complaint, and it is

FURTHER ORDERED that the parties remaining supply additional briefing to the Court on the effect of the decision of the District of Columbia Circuit Court of Appeals in *Harper v. McDonald,* 679 F.2d 955 (D.C.Cir.1982) on the issue presented to this Court by the *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) decision, and it is

FURTHER ORDERED that the parties submit their additional briefs to this Court no later than twenty-five (25) days from the issuance of this Order.